In the Matter of the Claim of VIOLA HORVAT, Respondent. EDWARD CORSI, as Industrial Commissioner, Appellant.

Submitted February 21, 1950; decided March 3, 1950.

*Nathaniel L. Goldstein, Attorney-General (Francis R. Curran and Wendell P. Brown* of counsel) ; for appellant.

No appearance for respondent.

Order affirmed, without costs.

Concur: LOUGHRAN, Ch. J., DESMOND, DYE, FULD and FROES-SEL, JJ.; LEWIS and CONWAY, JJ., dissent in opinion by CONWAY, J., from the affirmance of the order and vote to remit the matter to the Unemployment Insurance Appeal Board.

CONWAY, J. (dissenting). The Industrial Commissioner has been granted leave to appeal to this court from an order of the Appellate Division which affirmed a decision of the Unemployment Insurance Appeal Board which had modified a decision of an unemployment insurance referee, which in turn had sustained a determination made by an insurance manager acting for the Industrial Commissioner, affecting one Horvat, a claimant for unemployment insurance benefits.

Section 594 of the Labor Law is entitled *" Reduction of benefits for false statement "* and insofar as applicable here reads as follows: " A claimant who has wilfully made a false statement or representation to obtain any benefit under the provisions of this article shall forfeit benefits for at least the first twenty but not more than the first eighty effective days following discovery of such offense for which he otherwise would have been entitled to receive benefits."

Section 621 of the Labor Law is entitled *" Appeals to appeal board."* Subdivision 3 of the section provides: " Conduct of appeals. The appeal board may decide any case appealed to it under any provision of this article on the basis of the record and of evidence previously submitted in such case, or it may in its discretion hear argument or hold a further hearing, or remand such case to a referee for such purposes as it may direct. If a further hearing is to be held or argument had, the board shall fix a time therefor and shall notify the commissioner and any other party affected who appeared at the hearing before the referee. The board may affirm or reverse, wholly or in part, or

may modify the decision appealed from and shall render its decision promptly and shall thereupon send written notice thereof together with the reasons therefor to the commissioner and any other party affected thereby who appeared at the hearing before the referee.''

The facts may be stated briefly. Claimant was discharged by her employer on June 27, 1947. She had been married about two months before that date, and, as she subsequently admitted, she did not wish to work any longer because her husband was earning enough to support her, because she was pregnant and wished to stay at home. She did not leave her job, however, because she realized that she would not then be entitled to unemployment insurance benefits. Accordingly, she deliberately commenced to go late to work and to take time off, in order to compel her employer to discharge her. The plan succeeded and, after several warnings, she was discharged. Immediately thereafter, she filed a claim for unemployment insurance benefits, effective July 1, 1947, and thereafter received twenty-six payments of $21 each through January 8, 1948. While receiving those payments, she was interviewed on August 26, 1947, and falsely stated that she was not pregnant.

On July 2, 1948, she refiled for additional unemployment insurance benefits and received one payment. Apparently her application for these additional benefits showed that she had a five-month-old child. That prompted an investigation of her availability for employment. She was interviewed on July 27, 1948, by an '' Insurance Manager '', at which time, as above indicated, she confessed that she had been pregnant at the time of her discharge and that she had deliberately sought to force her employer to take that action. As a result of the interview, an insurance manager, acting for the Industrial Commissioner, determined that claimant had been unavailable for employment from July 1, 1947, to January 8, 1948, that she had been overpaid the amount of the twenty-six benefit checks totaling $546. The insurance manager also determined that she had wilfully made a false statement regarding her pregnancy on August 26, 1947, for the purpose of receiving benefits. The insurance manager imposed the maximum forfeiture of eighty effective days.

After a hearing, at which testimony was taken, an unemployment insurance referee sustained the initial determinations, stating in his decision:

" Claimant was pregnant in June, 1947, and by reason of that fact, it was her desire to withdraw from the labor market and remain at home. She did not want to quit her job because quitting would jeopardize her claim for unemployment insurance benefits. She therefore admittedly embarked upon a deliberate plan to bring about her discharge and was successful. Having succeeded in her plan of being discharged, claimant registered for benefits immediately and denied the fact that she was pregnant and continued to certify for benefits until she exhausted her benefit rights in January, 1948. Claimant's conduct in procuring her discharge because she was pregnant was tantamount to a withdrawal from the labor market on her part and rendered her unavailable for employment from the date of her discharge. Claimant's signed statement that she was not pregnant on August 26, 1947, constituted a wilful misrepresentation by her for the purpose of obtaining benefits. Claimant has been overpaid benefits received in the sum of $546. The imposition of an 80-day penalty for wilful false statement was correct.''

Claimant thereupon appealed to the Unemployment Insurance Appeal Board which modified the decision by reducing the eighty-day penalty to a twenty-day penalty. In its decision the appeal board stated: '' After a careful review of the record, testimony and evidence adduced before the referee, and due deliberation having been had thereon, and having found that the referee's findings of fact and conclusions of law are fully supported by the evidence in this case, and that no errors of fact or law appear to have been made, the Board adopts the findings of fact and the conclusions of law made by the referee as the findings of fact and conclusions of law of this Board, *except the penalty for the misrepresentation is hereby reduced from 80 forfeit days to 20 forfeit days (Appeal Board, 12, 152–45).*

'' OPINION:

'' The Board is of the opinion that the referee made proper findings of fact and correctly determined the issue involved in this case, except as modified herein.

'' DECISION:

'' The decision of the referee, as modified, is affirmed.'' (Emphasis supplied.)

The Industrial Commissioner contends that the Unemployment Insurance Appeal Board had no power to reduce the

amount of the forfeiture in the absence of a finding by the appeal board, with evidence to sustain it, that the initial determination by the commissioner was arbitrary or capricious or that there was an abuse of discretion.

The Appellate Division unanimously rejected this contention, saying (Deyo, J.): " Although the Industrial Commissioner has authority to make initial determinations, including the right to fix penalties, his discretion in such matters is not absolute, but is subject to a review by a referee and by the Unemployment Insurance Appeal Board, which is specifically given the authority to affirm, reverse or modify (Unemployment Insurance Law, § 621, subd. 3). There is no limitation on this right which would prevent the board from modifying a penalty, even in the absence of a finding that the initial determination of the commissioner was arbitrary or capricious." (275 App. Div. 442, 443.)

We agree with the opinion of the Appellate Division in the quotation just made. The statutory scheme of article 18 of the Labor Law contemplates that the Industrial Commissioner acting through his insurance managers scattered throughout the State, shall make " initial determinations " after finding the facts and exercising permissible discretion. Then, on appeal to the referee and later to the appeal board, the statute contemplates a complete review of all disputed questions of fact, of discretion, and of law. We find no limitation, either expressly or by implication, upon the power of the referee and the appeal board to review the initial determinations of those acting for the commissioner. We see no reason for reading such a limitation into the statute. On the contrary, we think there is sound basis for holding that there should be plenary power to review facts and discretion by the referee and the appeal board within the administrative agency, and we think that is what the Legislature intended.

We turn now to the provision of subdivision 3 of section 621 quoted (*supra*), which reads in part: " The board may * * * modify the decision appealed from * * * and shall thereupon send written notice thereof *together with the reasons therefor* to the commissioner and any other party affected thereby who appeared at the hearing before the referee." (Emphasis supplied.) That requirement is a sound one and was intended by the Legislature to promote efficiency within the administrative body and to be for the guidance of the Indus-

trial Commissioner. The appeal board, created by the Legislature, was obligated to obey that command. That it did not do in this case. It gave no reason. It is urged that when the appeal board wrote into its decision as we have quoted it (*supra*), " (Appeal Board, 12, 152–45) " that that was the reason. It appears that there was such a case. There a bricklayer had not disclosed the fact that while receiving unemployment insurance benefits he had been employed on three days by his regular employer and had earned $39.38 for those days. There was imposed by the local office a forfeiture of eighty effective days upon the ground that the claimant wilfully made a false statement. The appeal board upheld that finding but determined that the maximum penalty was an abuse of discretion and was arbitrary, unreasonable and harsh. It reduced the penalty to twenty effective days. In the course of its decision the appeal board wrote: " In the numerous cases under this section of the Law which have been appealed to the Board, the penalties imposed by the various local offices throughout the state have been in conformity with the schedule set forth in the aforesaid ' Local Office Procedures,' that is, twenty effective days for the first offense, forty-four effective days for the second offense, seventy-two effective days for the third offense, etc. We know of no case where the maximum penalty of eighty effective days was imposed against a claimant for one offense. It is significant that said ' Local Office Procedures ' provide that ' An essential factor in determining the gravity of an offense is the number of offenses committed.' "

It is urged that this paragraph constitutes the reason for the reduction of the penalty in the instant case from eighty to twenty effective days. We think it is no reason at all. The Legislature has commanded that the appeal board send its reasons for modification to the commissioner and any other affected party who appeared before the referee. The appeal board has responded with a schedule set forth in its " Local Office Procedures ". It has rewritten the statute so that the flagrancy and quality of the offense is of no moment. Neither is the amount of money of which the State has been deprived. The wrongdoings are to be considered only by quantity. A number are anticipated, even to the point where those above three are referred to as " etc. ".

The procedure here was not in accord with the legislative command and the matter should be remitted to the appeal board for proper action.