■ In the Matter of MORRIS M. GOLDSTEIN, Petitioner, v ALBERT B. LEWIS, as Superintendent of Insurance of the State of New York, Respondent. — In this proceeding transferred to this court by order of the Supreme Court, New York County (Blyn, J.), entered on August 19, 1981, the determination of the respondent Albert B. Lewis, Superintendent of Insurance, dated July 3, 1981, which found the petitioner untrustworthy to act as an insurance agent and broker pursuant to sections 117 and 119 of the Insurance Law and revoked his insurance licenses, is annulled, without costs or disbursements, the petition granted and petitioner's licenses reinstated. The petitioner herein, Morris M. Goldstein, obtained an insurance broker's license in 1949 from the State of New York. From that time until 1966, he was employed by his father-in-law's firm of Moe Levy Brokerage. In 1966, the business merged with Adler Brothers Brokerage, and the enterprise became known as L.A. Limited. Goldstein continued to practice his specialty of ocean marine insurance. Following another merger which occurred in 1967 (with Cohen Brokerage), the combined operation became, first, Levy, Adler & Cohen Brokerage and then L.A.C. Industries, Ltd. Although the petitioner was an officer and director of L.A.C. Industries since the company's inception, Edward Levy and Alvin Adler, chairman of the board and president, respectively, were in effective control of the firm. Almost contemporaneously with the formation of L.A.C. Industries, L.A.C. International, Ltd., a wholly owned subsidiary, was created by Edward Levy, Alvin Adler and Morris Cohen, another officer and director, to handle L.A.C. Industries' excess lines insurance business. Goldstein attended board meetings of L.A.C. Industries, but he was not a member of the L.A.C. International Board. According to the petitioner, since the executive board, most specifically Alvin Adler and Edward Levy, made all the important decisions for both L.A.C. Industries and L.A.C. International, general board meetings were simply formalities. Goldstein, who headed the ocean-marine division at L.A.C. Industries, contends that he had no power to influence corporate policy, and, whenever he raised questions concerning the financial condition of either company, he was informed that accountants and the bookkeeping department were in charge of such matters and that everything was running smoothly. Towards the end of 1977 and early 1978, the petitioner began to receive telephone calls from insureds asserting that their policies had been canceled for nonpayment of premiums despite the fact that the money had already been forwarded to L.A.C. Industries. Goldstein's inquiries about the complaints were unavailing, and, shortly thereafter, both Edward Levy and Alvin Adler ceased coming to the company's offices. In February of 1979, Edward Levy and Alvin Adler were indicted in the United States District Court for the Southern District, charging them personally and on behalf of

L.A.C. Industries and L.A.C. International with fraudulently procuring nearly eight million dollars in insurance premium loans between 1973 and 1978. Both men subsequently pleaded guilty to willfully and knowingly devising a scheme to defraud and obtain money from insurance premium finance companies by means of false and fraudulent pretenses, misrepresentations and promises; they were sentenced to terms of imprisonment. Thereafter, Edward Levy and Alvin Adler were also indicted by a Nassau County Grand Jury. However, no indictment was ever returned against the petitioner. On October 29, 1979, the New York State Insurance Department instituted proceedings against L.A.C. Industries, L.A.C. International and certain named individuals, including Goldstein, alleging that: (1) "You have demonstrated your incompetency and/or untrustworthiness to act as insurance agents and/or brokers within the contemplation of the Insurance Law"; and (2) "You have been guilty of fraudulent and dishonest practices." Nowhere in the specifications themselves was the petitioner mentioned, directly or otherwise. Hearings in connection with this matter began on December 12, 1979. Goldstein appeared by counsel but did not testify and was never, he declares, requested to produce any documents or be a witness. Further, the minutes of the hearing reveal no evidence whatever detrimental to the petitioner. On the contrary, one of those cited in the Insurance Department's charges, Carl S. Ingrelli, also an officer and a director of L.A.C. Industries and, in common with Goldstein, a vice-president of a separate division, testified that the ocean and marine unit was separate and apart from all other sections of the firm, including the property and casualty division. Alvin Adler and Edward Levy both stated that the fraud which they had committed had involved the property and casualty division. Neither implicated Goldstein. The hearing officer, in a determination rendered on July 3, 1981, and accepted by the Superintendent of Insurance, found that all of the respondents, with the sole exception of Carl J. Ingrelli, had "clearly demonstrated their incompetency and/or untrustworthiness to act as insurance agents and/or brokers within the contemplation of the Insurance Law and merit the revocation of their licenses." In his decision, the hearing officer noted that Ingrelli's life and health division was independent of the other operations and that the fraud concerned the property and casualty division. As for the petitioner, he was not referred to anywhere in the findings of fact, but merely in the conclusion where the hearing officer asserted that Goldstein was "an officer and sublicensee of LAC Industries, Ltd. when the huge premium loan fraud was perpetuated by his co-officers and co-sublicensees. It is unrealistic to believe that as such officer and sublicensee he was unaware that a fraud of such magnitude was being carried out. If, indeed, he was unaware of these fraudulent acts, then he failed in his duty as officer and sublicensee to exercise sufficient authority, care and supervision over the affairs of the licensed corporation. Finally, he failed to show that he was not personally at fault as to the matters on account of which the licenses of the corporate respondents are being revoked." The petitioner subsequently commenced the instant proceeding seeking review and vacatur of the administrative determination. The law is well settled that the courts may not overturn the decision of an administrative agency which has a rational basis and was not arbitrary and capricious. (*Matter of Pell v Board of Educ.*, 34 NY2d 222.) A rational basis exists where the administrative determination is supported by substantial evidence. (*300 Gramatan Ave. Assoc. v State Div. of Human Rights*, 45 NY2d 176.) Substantial evidence is defined as "such relevant proof as a reasonable mind may accept as adequate to support a conclusion or ultimate fact". It "does not rise from bare surmise, conjecture, speculation or rumor" (*300 Gramatan Ave. Assoc. v State Div. of Human Rights, supra*, at p 180). The record in the instant

case does not contain any evidence indicating that Goldstein was in any way connected to the fraudulent practices which took place. His ocean-marine division was not involved and Ingrelli, similarly situated to the petitioner, was found not to be personally at fault. The difference in result regarding Goldstein would appear to rest with his familial relationship to Edward Levy, the son of Moe Levy, and the fact that he was a sublicensee. Guilt by association is certainly no substitute for probative evidence. The hearing officer's conclusion that it was "unrealistic" to believe that Goldstein was unaware of the fraud constitutes no more than the simple "surmise, conjecture, speculation or rumor" condemned by the Court of Appeals in *300 Gramatan Ave. Assoc. v State Div. of Human Rights (supra,* p 180). Concur — Kupferman, J. P., Markewich, Bloom and Milonas, JJ.