OPINION OF THE COURT
Kristin Booth Glen, J.
In this CPLR article 78 proceeding, the City of New York, the New York City Department of Personnel (DOP) and the *277 City Personnel Director seek to annul the determination of the City Civil Service Commission (CSC) which found Gwendolyn Gariti qualified for the position of provisional eligibility specialist III with the Human Resources Administration (HRA). Petitioners allege that (1) the CSC was without jurisdiction to consider the appeal of the DOP’s decision to disqualify Gariti for the provisional position which in effect terminated Gariti’s services at HRA and that (2) even if the CSC did have jurisdiction to consider the appeal, the CSC’s finding that Gariti was qualified for the position was illegal, arbitrary, capricious and an abuse of discretion. For the reasons stated below, this court finds that the CSC properly asserted jurisdiction and that its conclusion that Gariti was qualified for the HRA provisional position had a rational basis in the record.
FACTS
Between 1962 and 1971, respondent Gwendolyn Gariti (hereinafter referred to as respondent) was a drug addict who supported her addiction by prostitution. During the period, she was convicted nine times for the crimes of prostitution and/or drug possession. Eight of these convictions were misdemeanors and one was a drug possession felony; none involved violence.
In 1972, respondent voluntarily enrolled in a methadone detoxification program and has not used illicit drugs since that time. In addition, she has earned a degree from the American Bible College, having thus far completed four semesters at the College of Human Services, earning grades high enough to be named to the dean’s list for 3 of the 4.
Gariti first began working for HRA in 1977 as a typist. Thereafter, she was promoted twice and commencing in 1980, served in the position of assistant supervisor.
In 1982, as a result of an altercation in a bar where respondent stabbed and killed a woman who threatened her with a knife, respondent was convicted of manslaughter in the first degree after a bench trial and was sentenced to the minimum permissible term of from 2 to 6 years. Respondent asserted that the stabbing was in self-defense and Justice Eve Preminger, who presided over the trial, recommended that she be incarcerated for the minimum period of two years and then be paroled. This recommendation was followed and on September 17, 1984, respondent was released to Project Good Hope, a work release program.
*278 On or about July 31, 1984, respondent filed a personal history questionnaire for the position of provisional eligibility specialist. On August 6, 1984, she was appointed to that position. By letter dated April 10, 1985, DOP disqualified her for "failure to satisfactorily complete her investigation”. On May 10, 1985, respondent appealed her disqualification to the CSC. Because respondent had already found other employment, the only relief she requested on appeal was a reversal of DOP’s determination that she was not qualified because of a lack of good character and an award of six months’ back pay.
Although the DOP made two attempts to have the appeal dismissed on jurisdictional grounds, in decisions dated May 9, and August 1, 1986, the CSC determined that the New York City Charter conferred jurisdiction upon it to hear Gariti’s appeal. The CSC further determined that fairness mandated that it consider appeals in cases such as this where provisional employees were disqualified "due to a purported lack of good character”.
Subsequently, on April 28, 1987, the CSC conducted an evidentiary hearing at which respondent and an HRA supervisor testified and both sides submitted briefs and exhibits. Thereafter, on September 28, 1987, the CSC reversed the DOP’s disqualification and found respondent qualified for the position of provisional eligibility specialist. Since the CSC determined that it did not have the power to award respondent back pay under Matter of Preddice v Callanan (69 NY2d 812 [1987]), the only practical effect of respondent’s victory was that her record would be clear of the disqualification. DOP now appeals the CSC’s determination.
ANALYSIS
CSC PROPERLY ASSERTED JURISDICTION
Before reaching the merits of DOP’s claim that the CSC improperly reversed DOP’s determination disqualifying respondent, it is first necessary to decide the threshold issue of whether the CSC had jurisdiction to consider respondent’s appeal of the DOP’s decision.
It is not disputed that the DOP acted within the powers conferred upon it by section 813 (a) (6) of the New York City Charter which empowers the personnel director: "To investigate applicants for positions in the civil service; to review their qualifications, and to revoke or rescind any certification or appointment by reason of the disqualification of the appli *279 cant or appointee under the provisions of the civil service law, and the rules of the personnel director or any other law”. The language of section 813 (a) (6) applies to all "positions in the civil service”, thereby covering both provisional and competitive appointments. (See, Civil Service Law § 2 [5] [definition of "civil service” includes all offices and positions in the service of the State or civil divisions except those connected with the military].)[1] This conclusion finds further support in section 813 (a) (7) of the New York City Charter, which specifically confers upon the personnel director the authority, "To review any appointment of persons as provisional employees within sixty days after appointment to assure compliance with this charter, the civil service law, and any rule or regulation issued pursuant to this charter or civil service law”.[2]
DOP disqualified respondent on the basis of her "unsuitable character, her criminal record and fraud in the application and use of aliases.” The procedures and grounds for disqualification are set forth in section 50 (4) of the Civil Service Law. Section 50 (4) (d) allows for disqualification of an applicant or appointee who has been found guilty of a crime, while section 50 (4) (f) and (g) permit disqualification based upon false statements made on an application or attempts to practice fraud in her/his application. In addition, section 4.3.2 (b) of the Rules and Regulations of the City Personnel Director states that "satisfactory character and reputation shall be deemed a part of the established minimum requirements and qualification * * * for appointment to a position”. Therefore, it is clear that the DOP acted pursuant to the powers specifically conferred upon it by New York City Charter § 813 (a) (6) and (7) when it found respondent disqualified.
Just as section 813 of the New York City Charter enumerates the powers of the City Personnel Director, subdivision (c) of section 812 specifies the powers of the CSC. In relevant part, it states that: "The civil service commission shall have the power to hear and determine appeals by any person *280 aggrieved by any action or determination of the personnel director made pursuant to * * * [§ 813 (a) (6) or (7)] and may affirm, modify, or reverse such action or determination” (emphasis added). The above-quoted statutory language establishes that the CSC has the power to hear and decide appeals by any person aggrieved by a decision of the DOP which, inter alia, disqualifies an applicant or appointee pursuant to the Civil Service Law or reviews appointments of provisional employees. (See, NY City Charter § 812 [c]; § 813 [a] [6], [7].) Since respondent was a person aggrieved by a DOP determination, it must be concluded that the CSC had specific statutory authority to hear her claim and affirm, modify or reverse the DOP’s determination. (NY City Charter § 812 [c].)
In so holding, the court rejects the DOP’s contention that the CSC does not have jurisdiction to hear this appeal because respondent, as a provisional employee, had no expectation of tenure or the rights that go with it and could therefore be terminated at any time without reason and without a hearing. In so arguing, DOP’s reliance upon the recent Court of Appeals decision in Matter of Preddice v Callanan (69 NY2d 812, supra) is misplaced. Although that decision did state that provisional employees are not entitled to back pay or reinstatement, it further went on to say that "other remedies may be available to provisional employees terminated in violation of a constitutional provision or some statute”. (Supra, 69 NY2d, at 814.)
It has been clearly established that due process requires a hearing when a provisional employee is terminated for reasons affecting the individual’s good name and character. (See, e.g., Matter of Brathwaite v Manhattan Children’s Psychiatric Center, 70 AD2d 810, 811 [1st Dept 1979].) Gariti clearly stated that she demanded a hearing for the purpose of clearing her name after the DOP disqualified her from her position on the basis of "bad character.” It is therefore determined that the right to a name-clearing hearing is one of the "other remedies * * * available to provisional employees” within the scope of the holding in Preddice (supra, at 814). Alternatively, since the DOP fully participated in the proceeding before the CSC, the DOP cannot now be heard to complain that the CSC made findings and exercised its discretion on the basis of the facts placed before it. (Matter of Garayua v New York City Police Dept., 68 NY2d 970 [1986].)
*281 STANDARD OF REVIEW
In an article 78 proceeding, an administrative agency’s decision may not be disturbed by the courts unless that decision was arbitrary, capricious or erroneous as a matter of law. (CPLR 7803 [3].) In fact, a court must affirm the agency’s decision when there exists a rational basis in the record to support the decision. (See, e.g., Matter of Pell v Board of Educ., 34 NY2d 222, 231 [1974].) Whether or not a rational basis exists turns on whether the administrative determination is supported by substantial evidence, which is defined as " 'such relevant proof as a reasonable mind may accept as adequate to support a conclusion or ultimate fact’ ”. (Matter of Goldstein v Lewis, 90 AD2d 748, 749 [1st Dept 1982], affd 59 NY2d 706 [1983], quoting 300 Gramatan Ave. Assocs. v State Div. of Human Rights, 45 NY2d 176, 180 [1978].)
Thus, when the CSC considers an appeal of a disqualified candidate, the CSC’s decision may not be disturbed by judicial review if the CSC decision finds support in the record. (Matter of Kowalski v City Civ. Serv. Commn., 52 AD2d 769, 770 [1st Dept 1976]; cf., Matter of City of New York v City Civ. Serv. Commn., 60 NY2d 436, 438 [1983], rearg denied 61 NY2d 759 [1984] [CSC decision reversed because it lacked a "rational basis” due to the decision being based on an error of law]; Matter of Department of Personnel v City Civ. Serv. Commn., 128 AD2d 426, 428 [1st Dept 1987], lv denied 70 NY2d 601 [1987] [CSC decision reversed because the CSC’s determination was "irrational” in that the record showed testimony vastly differed between the OOP’s hearing and the CSC’s].) In this case, therefore, the CSC’s determination must be upheld unless the DOP, as petitioner, shows by clear and convincing evidence that the CSC acted arbitrarily, capriciously, in bad faith or contrary to law in finding respondent to be qualified for the provisional position of eligibility specialist. (See, Matter of Pell v Board of Educ., supra.)
In so holding, this court rejects petitioners’ contention that in reviewing this matter, the court should only reach the CSC’s determination if it first finds that the original determination by DOP to disqualify respondent was arbitrary and capricious, since any other procedure would allow the CSC to improperly substitute its judgment for that of the DOP. This argument ignores the power of review given to the CSC by the Charter.
As discussed above, the New York City Charter gives the *282 CSC the power to decide appeals in connection with certain determinations by the DOP and to affirm, modify or reverse these determinations. (NY City Charter § 812 [c].) Petitioner is undeniably correct in asserting that the language in this statute does not expressly set forth the standard of review to be applied by the CSC, and that the Court of Appeals has not yet authoritatively addressed the issue of the applicable standard of review in cases where the CSC considers a disqualification on appeal. (See, e.g., Matter of Garayua v New York City Police Dept., 68 NY2d 970, supra.)
As a general rule, however, when a statute grants an administrative body the power to hear and decide appeals, and to affirm, modify or reverse a decision, and the statute does not limit the scope of review, courts have ruled that the appeal board has the power to reverse the decision below even if that decision was not arbitrary and was supported by substantial evidence. (See, e.g., Matter of Shurgin v Ambach, 56 NY2d 700, 702 [1982]; Matter of Horvat [Corsi], 300 NY 704, 708-709 [1950]; 2 NY Jur 2d, Administrative Law, § 164.) Indeed, when interpreting a similar statute, the New York Court of Appeals found that the Commissioner of Education’s review powers over determinations of a Hearing Panel were broad and with respect to any punishment to be imposed, the Commissioner could substitute his own judgment for that of the panel. (See, Matter of Shurgin v Ambach, supra, at 702; Matter of Levyn v Ambach, 56 NY2d 912, 914 [1982].)[3]
The case relied upon by petitioners in support of their position, Matter of Department of Personnel v City Civ. Serv. Commn. (94 AD2d 5 [1st Dept 1983]), is not to the contrary. The issue presented in that case was whether the CSC had the authority to declare a rule promulgated by the DOP to be valid. The CSC’s powers as enumerated in section 812 of the New York City Charter do not include the power to review the OOP’s rule-making authority. The New York City Charter *283 does, however, give the CSC power to hear and determine appeals and to affirm, modify or reverse DOP actions disqualifying candidates for appointment. (NY City Charter § 812 [c]; §813 [a] [6].)
THE CSC’S DECISION HAD A RATIONAL BASIS IN THE RECORD
In support of their petition, petitioners allege that Gariti was properly disqualified from her position at HRA on the basis of her "unsuitable character, her criminal record and fraud in her application and use of aliases”. The issue to be determined by the court in this proceeding, therefore, is whether the CSC’s determination overturning the DOP’s finding of disqualification was supported by a rational basis on the record and was not arbitrary, capricious, contrary to law or an abuse of discretion. (See, e.g., Matter of Purdy v Kreisberg, 47 NY2d 354 [1979]; Matter of Kowalski v City Civ. Serv. Commn., 52 AD2d 769, supra.)
The CSC’s finding that Gariti could not properly be disqualified on the grounds of fraud in her application and use of aliases is proper in all respects. The DOP is certainly correct in arguing that the Civil Service Law permits it to disqualify an employee "who has intentionally made a false statement of any material fact in his application”. (Civil Service Law § 50 [4] [f]; Matter of Stewart v City Civ. Serv. Commn., 84 AD2d 491 [1st Dept 1982].) It is also clear that Gariti’s application does not list her entire criminal record, nor all of the aliases under which she was arrested. DOP’s reliance upon section 50 (4) (f) and these omissions to uphold its disqualification of Gariti, however, is misplaced.
At her hearing before the CSC, Gariti testified that she did not intentionally withhold any information from the DOP; she instead claims that she provided all the information that she was directed to by her interviewer and further that she informed the DOP investigator of her full conviction record, including her pre-1971 offenses, and provided fingerprints so that the DOP could obtain complete records from the appropriate authorities. Gariti’s testimony that the resulting omissions were not intentional was not contradicted.
In disposing of the issue of whether Gariti could properly be disqualified pursuant to Civil Service Law § 50 (4) (f) for these omissions, the court need not, however, reach the issue of the credibility of respondent’s testimony. Respondent did not re *284 ceive any notice prior to her termination informing her that, disqualification was being contemplated on the basis of fraud in her application or the use of aliases. Rather, the "Notice of Proposed Personnel Action” sent to her prior to her termination stated only that she was considered not qualified in investigation for "failure to meet character requirements— conviction record”. When an employee is terminated without receiving prior notice of the reasons for disqualification and an opportunity to respond to them, the termination is unlawful. (Matter of Ferrine v Bahau, 75 AD2d 669 [3d Dept 1980].)
This conclusion is further supported by the Rules and Regulations of the City Personnel Director. Rule 4.3.1 (c) provides that "[n]o person shall be disqualified by the city personnel director unless such person has been given a written statement by the city personnel director of the reasons therefor and afforded an opportunity to make an explanation and to submit facts in opposition to such disqualification.” Thus, the CSC’s finding that the DOP’s determination to disqualify Gariti on the basis of fraud in her application was improper as a matter of law must be upheld.
Similarly the court also finds that the CSC’s determination that the DOP could not disqualify Gariti on the basis of her criminal convictions to be proper in all respects. In making its determination, the DOP Division of Investigations’ report to the Personnel Director simply contained a list of Gariti’s past offenses, followed by the conclusory statement that the conviction record "shows a pattern of disregard for law and demonstrated that [Gariti] lacks * * * good character”. This conclusory determination violates article 23-A of the Correction Law.
Article 23-A was enacted to prevent unfair discrimination m the licensure and employment of persons previously convicted of crimes. (See, Matter of Schmidt & Sons v New York State Liq. Auth., 52 NY2d 751 [1980].) Pursuant to Correction Law § 752, a conviction record cannot serve as a basis for disqualification unless it bears a direct relationship to the employment in question or creates an unreasonable risk to property. Further, paragraphs (a) through (h) of subdivision (1) of Correction Law § 753 set forth the factors that must be considered in making a determination whether there exists a "direct relationship” or an "unreasonable risk” which warrants denial of employment. These factors include the public policy of the State to encourage the employment of persons previously convicted of criminal offenses; the specific duties related to the employment sought; the bearing of the conviction on the *285 person’s fitness or ability to perform the job; the time that has passed since the conviction; the age of the person when convicted; any information produced by the person in regard to his or her rehabilitation and good conduct; and the legitimate interest of the public agency or private employer in protecting property, and the safety and welfare of specific individuals or the general public. (See generally, Matter of Marra v City of White Plains, 96 AD2d 17 [2d Dept 1983]; Matter of Incorporated Vil. of Val. Stream v Local 342, 89 AD2d 1016 [2d Dept 1982].)
In making its determination to disqualify Gariti, the DOP did not address any of the above-enumerated factors, and instead based its disqualification upon Gariti’s conviction record alone. In contrast, the CSC heard testimony and received evidence that establishes had the DOP properly evaluated each of factors set forth in Correction Law § 753, it could not have reasonably concluded that Gariti should be disqualified.
The CSC heard testimony regarding Gariti’s rehabilitation after her last conviction in 1971 and concluded that those convictions no longer affected her fitness for employment. Since the DOP itself found Gariti qualified for employment in 1977 in spite of these convictions, it must be determined that the evidence before the CSC amply supports its conclusion that Gariti’s pre-1971 offenses did not render her unfit for employment.
The CSC also heard a great deal of testimony and reviewed a number of documents that support its conclusion that Gariti’s 1981 manslaughter conviction was insufficient to support a finding of disqualification. The CSC received and reviewed a letter from Justice Eve Preminger, the Judge who tried the manslaughter case and who sentenced Gariti, stating that "[it] was not [my] intention when punishing Ms. Gariti for her single though serious transgression to deprive her of a chance to earn a livelihood.” It also received letters from two of respondent’s parole officers describing her as a "model parolee” who "does not pose any threat to the community and has proven that past mistakes will not be repeated in the future”.
Additionally, Gariti’s HRA field director testified that she was a skilled and efficient eligibility specialist whose work was outstanding; this testimony was corroborated by the written submissions of HRA’s Director of Personnel and six HRA supervisors. Further, in May 1985, the same month that the DOP disqualified and terminated her, Gariti was presented *286 with an award certificate signed by Mayor Koch and the Commissioner of HRA, which stated that "[t]he performance of such service to our Agency and those it serves has helped to make the quality of life better for all people of our city.” Finally, by the time of the hearing, respondent had already obtained other employment; the record provides no basis upon which to premise a finding that her performance at her new job was anything but satisfactory.
It is therefore concluded that there was substantial evidence before the CSC to support its determination that Gariti’s criminal convictions did not have a direct bearing on her ability to perform the duties of an eligibility specialist and that her employment in that position would not create an unreasonable risk of harm to the agency or the people that it serves. The determination of the CSC finding respondent Gariti to be qualified was thus made in full compliance with article 23-A of the Correction Law and was neither arbitrary nor capricious.
CONCLUSION
The CSC’s determination finding respondent Gariti to be qualified for the position of eligibility specialist is proper in all respects. Accordingly, the petition seeking to annul the determination is dismissed.

. See also, McKinney’s Cons Laws of NY, Book 1, Statutes § 114 (indicating an elementary principle of statutory construction that when "[t]here is nothing to indicate a contrary intent on the part of the lawmakers, terms of general import in a statute ordinarily are to receive their full significance.”).

. Section 813 (a) (7) of the New York City Charter cannot be directly relied upon by the DOP as authority for disqualifying respondent, since it did not make its determination to disqualify Gariti until eight months after her appointment.

. (See also, Babcock v Foley, 308 Mich 412, 14 NW2d 48 [1944].) The Supreme Court of Michigan, when interpreting similar language in a city charter (i.e., a dismissed employee "may appeal to the Civil Service Board”) found this language to mean that the appeal board had broad powers of review and the provision authorized the Civil Service Commission to form its own judgments about the merits of a dismissal even though the city charter vested the authority to terminate employees to a city manager. Basically, the Michigan Supreme Court found that "when the word 'appeal’ is used without any limitations as to the nature or method of review * * * it means a trial de novo”. (308 Mich at 415, 14 NW2d, at 49.) (Accord, State ex rel. Spurck v Civil Serv. Bd., 226 Minn 240, 245-247, 32 NW2d 574, 579 [1948].)