◼ THE ASSOCIATION FOR COMMUNITY REFORM NOW ("ACORN") et al., Appellants, v MAYOR MICHAEL BLOOMBERG et al., Respondents. [861 NYS2d 325]—

Order and judgment (one paper), Supreme Court, New York County (Michael D. Stallman, J.), entered September 21, 2006, which, to the extent appealed from, denied the petition and dismissed the proceeding brought pursuant to CPLR article 78, unanimously affirmed, without costs.

Petitioners challenge respondents' determination to build a new solid waste marine transfer station (MTS) on city-owned property located at East 91st Street and the East River in Manhattan. Respondents plan to build the new MTS on the site of an existing but inoperable MTS that will be demolished. The CPLR article 78 court properly found that respondents' determination to build the new MTS was rational (*see* CPLR 7803

[3]; *Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County*, 34 NY2d 222, 231 [1974]). The record indicates that the waterfront location offers operational convenience for transferring waste collected in the area, that no rezoning of the site is required, and that the use of an existing city-owned property is more cost-effective than the alternative of purchasing and condemning waterfront property elsewhere.

The court properly found that the proposed MTS will not cause any significant or drastic changes to the existing land uses or the overall character of the neighborhood. The record indicates that the FDR Drive separates neighboring land uses from the site, that a new access ramp to the site will include 14-foot-high sound barriers, and that the tipping floor in the processing building will eliminate on-street queuing of collection trucks in the neighborhood. Moreover, surrounding recreational facilities and residences came into being while the existing MTS was in operation.

The court properly rejected petitioners' contention that construction of the new MTS violates the purpose of respondent Department of Sanitation's (DSNY) own siting rule, which prohibits the construction of any new transfer station within 400 feet of a residential district, hospital, public park or school (16 RCNY 4-32 [b] [1] [ii]). As petitioners concede, the subject rule does not apply to city-owned transfer stations (*see* 16 RCNY 4-31; Administrative Code of City of NY § 16-130 [b]).

We reject petitioners' contention that respondents' determination is irrational because the Zoning Resolution performance standard for noise cannot be met at a particular point on the site boundary. DSNY's final environmental impact statement (FEIS) indicated that the background noise levels at that point already exceeded the Zoning Resolution performance standard and therefore that the theoretical exceedance at the boundary could not be perceived.

We decline to address petitioners' argument that the court should have determined that the M1-4 (light industrial) zoning designation for the site is no longer appropriate, because they did not request such relief in the petition (*see e.g. Dominguez v Lafayette-Boynton Hous. Corp.*, 240 AD2d 310, 313 [1997]).

The court properly rejected petitioners' contention that the proposed MTS is inconsistent with the City's initiative to rezone the East River waterfront in the Greenpoint and Williamsburg sections of Brooklyn. The rezoning in Brooklyn is a neighborhood-specific project that is irrelevant to the appropriateness of building the MTS at East 91st Street in Manhattan.

Petitioners failed to preserve their argument that the proposed MTS is inconsistent with subpolicies 1.1, 1.2, and 2.2 and policies 8, 9 and 10 of the City's Waterfront Revitalization Program (WRP), and we decline to consider it (*see Gregory v Town of Cambria*, 69 NY2d 655 [1986]). Were we to consider this argument, we would reject it, because the record indicates that the proposed MTS will not substantially hinder the achievement of any of the policies of the WRP and indeed will advance one or more of the policies (*see* WRP at http://www.nyc.gov/html/dcp/html/wrp/wrp.shtml).

The court properly rejected petitioners' contention that respondents' determination was irrational because they rejected four alternative sites in Manhattan based in part on their proximity to parks and residences. Respondents rationally rejected the alternative sites for various reasons, including technical reasons that did not apply to the East 91st Street MTS.

The court properly found that respondents took the requisite "hard look" at the relevant areas of environmental concern and made a "reasoned elaboration" of the basis for their determination (*Matter of Jackson v New York State Urban Dev. Corp.*, 67 NY2d 400, 417 [1986]). The FEIS consists of two volumes containing nearly 3,000 pages of text, tables and figures and a third volume of technical appendices issued on compact disc. It includes an executive summary of the overall potential environmental impacts of, and mitigation measures for, the proposed project, as well as the alternatives considered.

Contrary to petitioners' contention, DSNY's analysis of the environmental impacts at less than the maximum capacity of 5,280 tons per day (tpd) was not arbitrary and capricious or a violation of the law (*see Matter of Neville v Koch*, 79 NY2d 416, 428 [1992]). DSNY reasonably exercised its discretion in analyzing the on-site impacts based on a worst-case scenario of 4,290 tpd, since the maximum 5,280 tpd would be reached only under rare circumstances (*see id.* at 427; *Matter of Fisher v Giuliani*, 280 AD2d 13, 21 [2001]). DSNY also reasonably exercised its discretion in analyzing off-site impacts based on a capacity of 1,873 tpd, which is almost 25% higher than the amount that the MTS would experience on an average day.

Contrary to petitioners' contention, DSNY's analysis of alternatives to the proposed project was sufficient. DSNY considered "a *reasonable range* of alternatives to the proposed project" (*Matter of C/S 12th Ave. LLC v City of New York*, 32 AD3d 1, 7 [2006] [emphasis added]). It was not required to consider every conceivable alternative (*see Aldrich v Pattison*,

107 AD2d 258, 266 [1985]). DSNY rationally rejected a Harlem River Yard site in the Bronx based on the policy objective of avoiding the trucking of "Manhattan waste" to a facility in another borough. Concur—Andrias, J.P., Friedman, Buckley, McGuire and Moskowitz, JJ. [*See* 13 Misc 3d 1209(A), 2006 NY Slip Op 51750(U).]