OPINION OF THE COURT
Cynthia S. Kern, J.
Petitioners bring the instant petition pursuant to article 78 of the Civil Practice Law and Rules challenging respondents New York City Department of Transportation (DOT), New York City Department of Parks and Recreation (DPR) and the City of New York’s (the City) decision to install a bike share station in the park known as Lieutenant Joseph Petrosino Square Park (Petrosino Park or the park). For the reasons set forth below, the petition is denied.
The relevant facts are as follows. Petrosino Park is located at the intersection of the Manhattan neighborhoods known as SoHo, Little Italy, NoHo and Chinatown. It is bordered by Spring Street to its north, Kenmare Street to its south, Lafayette Street to its west and Cleveland Place to its east. The park was built in 1913 and was originally known as Kenmare Memorial Park. In 1987, it was renamed to Petrosino Park in honor of an Italian police officer who served the city in the early 1900s. *228 Petrosino Park consists of a triangular plaza, the central portion of which is enclosed by fencing and contains trees, shrubs, green ground cover, flowers and park benches. The northern tip of the triangle, located outside the fencing, was dedicated as an art installation space, a place for temporary, large art projects to be displayed.
In 2002, after the park had fallen into disrepair, community members began a campaign to revitalize the park. Thereafter, an overhaul of the park began, during which the park expanded 20 feet west, reclaiming a seldom-used lane of traffic in Lafayette Street, and expanded 156 feet north toward Spring Street, adding a total of 5,050 square feet to the previous 6,000-square-foot park. The pavement and many of the trees were replaced and the fencing and original piers were preserved to maintain the architectural features of the 1913 design. The official park dedication ceremony occurred on Columbus Day, October 13, 2009, with DPR’s Commissioner presiding before a collection of Italian dignitaries and on May 20, 2012, DPR’s Art & Antiquities Director presided over the opening of the inaugural art exhibit in the art installation space.
In August 2011, DOT announced the New York City bike share program (the program). The New York City Department of City Planning then conducted a feasibility study of the program in New York City and the DOT undertook a multi-year public planning process to determine the location of the bike share stations, which included many public meetings, presentations and demonstrations, as well as meetings with elected officials, property owners and other stakeholders. On February 6, 2012, members of Community Board 2 (CB2) attended DOT’s bike share community planning workshop where they learned that DOT proposed installing a bike share station in the art installation space of the park. Petitioners allege that the community members present at the meeting objected to that location and suggested a number of other possible locations, including a location on the east side of Lafayette Street and north of Spring Street and on Cleveland Place. Additionally, Friends of Petrosino Square sent a letter to DOT memorializing its objection. DPR landscape architect, Chris Crowley, seconded the objection, stating that there “was a lot of effort during the designing phase to preserve the front triangle of Petrosino for art display.” Additionally, DPR Manhattan Borough Commissioner William Castro, through his Chief of Staff, Steven Simon, agreed, stating that “this is not an appropriate location for a bike station.”
*229 In May 2012, CB2 passed a unanimous resolution supporting the program but resolved that it “does not favor locating Bike Share docking stations in any of the parks, large or small, within the CB2 district.” In March 2013, at a CB2 Traffic and Transportation Committee meeting, DOT’s Wendy Feuer released a map of the planned bike share stations, which showed that DOT had sited a bike share station for an alternate location on Cleveland Place and not within the park. However, members of the community and the New York City Fire Department (FDNY) raised safety and traffic concerns for the new site, specifically, that the bike share station would be in the way of the turning radius of a fire truck. In response to these concerns, on or about April 23, 2013, DOT alleges that its staff visited the site and identified several challenges related to siting a bike share station on Cleveland Place and also rejected as inappropriate other locations. DOT’s staff ultimately determined that, due to traffic flow and safety concerns, the appropriate place for a bike share station would be in the northern tip of the park as it would not interfere with local businesses or fire access routes and it comports with the program’s siting guidelines.
On April 24, 2013, DOT notified several community members that the bike share station would be placed on the “northern side” of the park. The next day, community members observed workers preparing to install the bike share station inside the park, and when confronted by the community members, the workers left the site without making any installation. However, on April 27, 2013, the bike share station was installed in the northern portion of Petrosino Park. Petitioners then commenced this article 78 proceeding by order to show cause seeking to preliminarily enjoin respondents from maintaining the bike share station in the northern corner of the park.
Initially, this court finds that the placement of the bike share station in the park does not violate the public trust doctrine. The public trust doctrine prohibits the alienation or substantial intrusion of dedicated parkland for other than park purposes without approval of the New York State Legislature. (See Friends of Van Cortlandt Park v City of New York, 95 NY2d 623 [2001]; see also Williams v Gallatin, 229 NY 248 [1920].) To determine whether there has been a violation pursuant to the public trust doctrine, the court must first determine whether the land at issue is actually dedicated parkland, either explicitly or implicitly. (See Matter of Angiolillo v Town of Greenburgh, *230 290 AD2d 1 [2d Dept 2001].) Parkland dedication is typically achieved through express written provisions. (See Brooklyn Park Commrs. v Armstrong, 45 NY 234 [1871] [an act of the New York State Legislature granted the Borough of Brooklyn the right to acquire, through eminent domain, private lands for use as a public park].) However, “[i]n the absence of a formal dedication of land for public use, an implied dedication may exist when a municipality’s acts and declarations manifest a present, fixed, and unequivocal intent to dedicate.” (Riverview Partners v City of Peekskill, 273 AD2d 455, 455 [2d Dept 2000].) It is well settled that “[t]he intent to dedicate [parkland] may be shown by either acts or declarations so long as that ‘act or declaration on the part of the owner show[s] a present, fixed, unequivocal purpose to dedicate.’ ” (Winston v Village of Scarsdale, 170 AD2d 672, 673 [2d Dept 1991], citing 11 McQuillin, Municipal Corporations § 33.30 [3d ed], and 43 NY Jur 2d, Dedication § 9.) Dedication of parkland is implied where the City holds land out as a park and the public uses the land as a park. (See Village of Croton-On-Hudson v County of Westchester, 38 AD2d 979, 980 [2d Dept 1972] [“While . . . there does not appear to have been a formal dedication of the land to such use, we think the long-continued use of the land for park purposes constitutes a dedication and acceptance by implication” (citations omitted)].)
Based on the undisputed evidence, this court finds that the park is impliedly dedicated parkland for purposes of the public trust doctrine. As an initial matter, the park has been held out by the DPR and DOT as a park since its creation in the early 1900s. Although the park fell into disrepair at one time, the park was renovated and continues to be used and enjoyed as a park to this day. Additionally, signage in and around the park bears the DPR name and logos and the signs themselves describe the park as a “public space” and “park.” Further, DPR’s Commissioner sponsored the groundbreaking renovation of the park in 2008 and eventually presided over an official park dedication ceremony held on the southwest corner of the park in October 2009. Additionally, city officials, including DPR’s Art & Antiquities Director, presided over and dedicated the northern tip of the park as the art installation space.
Although the park is impliedly dedicated parkland, this court finds that the placement of the bike share station in the park does not violate the public trust doctrine as it is a proper park purpose. “The test of a nonpark [purpose] ... is not whether the facility attracts people who are not already in the park . . . *231 [but] rather whether the facility concerned offers substantial satisfactions to the public, which would only be possible in a park setting.” (795 Fifth Ave. Corp. v City of New York, 40 Misc 2d 183, 191 [Sup Ct, NY County 1963], affd 15 NY2d 221 [1965].) Furthermore, in determining proper park use, the Court of Appeals has held that
“[a] park is a pleasure ground set apart for recreation of the public, to promote its health and enjoyment. It need not and should not be a mere field or open space, but no objects, however worthy, such as court houses and school houses, which have no connection with park purposes, should be permitted to encroach upon it without legislative authority plainly conferred . . . Differences naturally arise as to the meaning of the phrase ‘park purposes.’ . . . [M]any other common incidents of a pleasure ground contribute to the use and enjoyment of the park. The end of all such embellishments and conveniences is substantially the same public good. They facilitate free public means of pleasure, recreation and amusement and thus provide for the welfare of the community.” (Williams, 229 NY at 253-254 [citations omitted].)
Moreover, the New York City Charter grants DPR’s Commissioner wide latitude regarding proper park facilities. (See NY City Charter § 533 [a] [1], [3].) DPR’s Commissioner is “vested by law with broad powers for the maintenance and improvement of the city’s parks.” (795 Fifth Ave. Corp. v City of New York, 15 NY2d 221, 225 [1965].) Further, the Commissioner is empowered with “abundant discretion to satisfy changing concepts of parkland use.” (795 Fifth Ave. Corp. v City of New York, 40 Misc 2d 183, 193 [Sup Ct, NY County 1963].) Proper park uses may change over time and, generally, improvements to parks must always be encouraged. (See 795 Fifth Ave. Corp., 40 Misc 2d at 192-193 [“The realities of our everyday city life require that every attempt to improve a park so as to better satisfy human needs for relaxation, refreshment and enjoyment should be encouraged rather than be met with strong opposition . . . (a)s times change, park uses change”].)
In the instant case, the court finds that the bike share station is a proper park purpose for purposes of the public trust doctrine. As an initial matter, respondents have provided evidence that bicycling is an important form of recreation that has had a proper “park purpose” for many years demonstrated by *232 the fact that the infrastructure to support bicycling, such as bike paths, bicycle racks and rest stations are common incidents in parks. Specifically, DPR installed a bicycle rack in Petrosino Park prior to the bike share station’s installment and it is still maintained there today. Further, a bike share station is unlike those facilities found by courts to have improper park purposes, such as courthouses and schoolhouses, as a bike share station has a direct connection to the important park purpose of bicycle recreation and allows easy access to and further encourages the use of parkland by the public.
Petitioners’ assertion that the bike share station is an improper park use because it is placed there as part of a purely commuter-transit program is without merit. Respondents have affirmed that from its inception, the program was meant to encourage use of bicycles in New York City for commuting and recreation by residents and tourists alike. The fact that many commuters use the program is irrelevant to a determination that it serves a proper park purpose as the program may serve dual purposes. Those who participate in the program may use the bicycles for commuting to and from work or for recreation to transport themselves to restaurants, bars, parks and countless other venues for entertainment. The program places no limitation on the proper use of the bicycles but only on the amount of time a patron of the program may reserve a specific bicycle. If a program participant wants to bike around the city for many hours at a time, the participant may certainly do so and the only limitation placed on such participant is that he or she must use different bicycles at the various stations around the city.
Petitioners’ assertion that the bike share station is an improper park use because the program charges a fee is also unavailing. Concessions with fees such as bike rentals, boat rentals, cafes and ice skating rinks are common in parks and have consistently been upheld as proper by the courts. (See Matter of Committee to Preserve Brighton Beach & Manhattan Beach v Planning Commn. of City of N.Y., 259 AD2d 26 [1st Dept 1999] [rejecting claim that concession to construct and operate a golf-driving range, a miniature golf course, a domed in-line skating rink and batting cages violated the public trust doctrine because the operator would charge a fee for some services].)
Additionally, petitioners’ assertion that the bike share station is an improper park use because one cannot bicycle within the *233 park due to its small size is without merit. The bike share station has a proper park purpose as it allows members of the public to enjoy bicycling from park to park or from park to roadway. Once docking a bicycle in the bike share station in the park, patrons of the program may use the park as a respite, a spot for a meal or even as their final destination. Petitioners’ assertion that the bike share station is an improper park use because it is located in the art installation space is also unavailing. As an initial matter, petitioners have not demonstrated that the placement of the bike share station in the northern part of the park completely forecloses the display of art in that area. Additionally, that the bike share station is located in an area where there have been public art installations displayed is not relevant to the question of whether it is a proper park use. The City Charter vests the DPR’s Commissioner “with broad powers for the maintenance and improvement” of its parks. (795 Fifth Ave. Corp., 15 NY2d at 225.) DPR’s Commissioner’s authority includes discretion to designate various park areas for specific uses as the Commissioner has “abundant discretion to satisfy changing concepts of parkland use.” (795 Fifth Ave. Corp., 40 Misc 2d at 193.) That the northern part of the park was once designated as an art installation space does not guarantee that it will forever be designated as such or that it may not share its space with a bike share station.
Additionally, this court finds that respondents’ decision to site a bike share station in the park was rational. On review of an article 78 petition, “[t]he law is well settled that the courts may not overturn the decision of an administrative agency which has a rational basis and was not arbitrary and capricious.” (Matter of Goldstein v Lewis, 90 AD2d 748, 749 [1st Dept 1982].) “In applying the ‘arbitrary and capricious’ standard, a court inquires whether the determination under review had a rational basis.” (Matter of Halperin v City of New Rochelle, 24 AD3d 768, 770 [2d Dept 2005]; see Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, 231 [1974] [“(r)ationality is what is reviewed under both the substantial evidence rule and the arbitrary and capricious standard”].) “The arbitrary or capricious test chiefly ‘relates to whether a particular action should have been taken or is justified . . . and whether the administrative action is without foundation in fact.’ Arbitrary action is without sound basis in reason and is generally taken without regard to facts.” (Pell, 34 NY2d at 231 [cita *234 tion omitted].) Additionally, “in reviewing administrative determinations, a court may not overturn an agency’s decision merely because it would have reached a contrary conclusion.” (Matter of Sullivan County Harness Racing Assn. v Glasser, 30 NY2d 269, 278 [1972].)
In the instant matter, the petition must be denied on the ground that respondents’ decision to site the bike share station in its location in the northern part of the park was rational. Respondents have affirmed that the bike share station in the park was sited in accordance with the program’s siting guidelines and based on technical considerations and an extensive public input process, which included public hearings and community meetings. Specifically, DOT found that the park was an appropriate location as it enjoyed support during the planning process; it does not interfere with local businesses or fire access routes; it is centrally located at the convergence of several distinct neighborhoods; it offers a convenient and safe place for people to begin and end rides; it allows for wide sidewalk clearance for pedestrians; it is located near a public seating area that is within the fenced-in area of the park; and the park has long had and still has public bicycle racks on site. Additionally, the siting guidelines specifically provide that “[s]ites may be on Parks Department property or on other City properties at the discretion of the relevant agency.”
Petitioners’ assertion that DOT’s decision was arbitrary and capricious because there were alternative locations for the bike share station and because the DOT ignored community feedback when deciding to site the bike share station in the park is without merit. As an initial matter, the fact that DOT ultimately selected a location disfavored by petitioners does not support a finding that such decision was arbitrary and capricious. (See Association for Community Reform Now [“ACORN”] v Bloomberg, 52 AD3d 426 [1st Dept 2008] [upholding the rejection of petitioners’ claim that the agency’s decision was irrational because it rejected proposed alternative locations for its siting decision].) Indeed, respondents have affirmed that many members of the community supported the location of the bike share station at issue. Additionally, when certain community members raised objections to the location in the park, representatives from DOT visited the site and entertained the option of siting the bike share station at other locations in the area. However, after the FDNY and others objected to the new locations due to safety and traffic concerns, DOT determined that *235 the northern portion of the park was the most appropriate location for a bike share station in the area. DOT rationally rejected alternative locations for various reasons, including safety concerns and that alternative locations in the surrounding area would not comport with the siting guidelines because of the number of restaurants and businesses in the area.
Petitioners’ assertion that DOT’s decision was arbitrary and capricious because the placement of the bike share station violates the provisions of the siting guidelines which state that sidewalk sites “should not interfere with existing pedestrian travel patterns” and must have sufficient sidewalk space is also without merit. Petitioners base such assertion on their observations that “pedestrians are constantly dodging bikes” and that when the bikes are docked in the bike share station, there is “only a little more than three feet of clearance” in some places. However, Kate Fillin-Yeh, the director of the program, affirms that the bike share station “is surrounded on the west, east and north sides by at least six feet of sidewalk space, allowing pedestrians a wide berth . . . .” Furthermore, petitioners fail to point to any portion of the siting guidelines that state that at least three feet of sidewalk space is an insufficient amount of space for pedestrians to adequately maneuver on the sidewalk or that the location of the bike share station interferes with pedestrian travel patterns, such as crosswalks.
Finally, that portion of the petition which requests a preliminary injunction enjoining respondents from maintaining the bike share station in the park for the remainder of this proceeding is denied as moot as this court has determined that the petition must be dismissed.
Accordingly, the petition is denied and is hereby dismissed in its entirety.