■ In the Matter of CITY OF NEW YORK et al., Petitioners, v NEW YORK CITY CIVIL SERVICE COMMISSION et al., Respondents.
[817 NYS2d 254]—

Determination of respondent New York City Civil Service Commission, dated June 4, 2003, which reversed the determination of petitioner New York City Department of Citywide Administrative Services (DCAS) finding respondent Troy S. Huggins not qualified for the position of watershed maintainer (Examination No. 9039) within petitioner New York City Department of Environmental Protection (DEP), unanimously confirmed, the petition denied and the proceeding brought pursuant to CPLR article 78 (transferred to this Court pursuant to CPLR 7804 [g] by order of the Supreme Court, New York County [Faviola A. Soto, J.], entered February 17, 2004) dismissed, without costs.

On December 17, 2001, respondent Huggins received a provisional appointment to the position of watershed maintainer within DEP, subject to the results of a background investigation. According to the relevant notice of examination, the duties of the position of watershed maintainer "relate[ ] to the operation, maintenance, repair and inspection of facilities, equipment and lands in the watershed areas and reservoir and aqueduct systems of the City of New York."

In his employment application, Huggins disclosed that he had two 1998 criminal convictions, for attempted robbery in the second degree and for sexual abuse in the first degree (both class D felonies), for which he had been sentenced to concurrent terms of 18 months to 3 years in prison. DCAS's subsequent investigation revealed, in addition, two 1997 convictions, for criminal possession of a weapon in the fourth degree and for theft of transportation services (both class A misdemeanors). The sentence on the weapon possession conviction had been a conditional discharge and a $250 fine; the sentence on the theft of services conviction had been three days in jail. Based on this information, DCAS found that Huggins' character rendered him "not qualified" for the position of watershed maintainer, and terminated his employment on July 13, 2001.

Huggins appealed the action of DCAS to the Civil Service Commission (the Commission), pursuant to that body's power to hear such appeals under NY City Charter § 813 (d). After an evidentiary hearing in which DCAS participated without objection, the Commission, by a three-to-two vote, reversed DCAS's determination and directed that Huggins be reinstated. In reaching this conclusion, the majority of the Commissioners noted, among other things, that Huggins' convictions "were not job related and he has not been involved in any other criminal offenses since his release from prison in 2000." The majority on the Commission also noted that Huggins had submitted reference letters from his supervisors at DEP and at a previous private employer "attesting to his work ability and that he is a responsible and hard working employee"; that his employment at DEP from December 2001 to July 2002 had been "without disciplinary problems"; and that "there was no direct connection in [sic] [Huggins'] job duties and his background that adequately present him as a threat to public safety."

The City and the Commissioners of DCAS and DEP (collectively, the City) have brought this CPLR article 78 proceeding (transferred to this Court pursuant to CPLR 7804 [g]) seeking to annul the Civil Service Commission's determination and to reinstate DCAS's determination that Huggins' character, as demonstrated by his criminal record, disqualifies him for the position of watershed maintainer. At the outset, we observe that, because the City participated without objection in the de novo evidentiary hearing conducted by the Commission, "[t]he sole question before us . . . is whether the Commission's reinstatement determination was rational" (*Matter of City of New York v New York City Civ. Serv. Commn.*, 6 NY3d 855, 858 [2006]). As the Court of Appeals explained in the decision just

cited: "Having failed to object to the authority of the Civil Service Commission to hear the matter anew . . . DCAS cannot now complain that the Commission had no power to decide the matter de novo . . . . [T]he agency 'charted [its] own procedural course and cannot now be heard to complain because the Civil Service Commission made findings and exercised its own discretion on the basis of the facts placed before it' " (*id.*, quoting *Matter of Garayua v New York City Police Dept.*, 68 NY2d 970, 972 [1986]).

Given the deferential standard governing our review of the Commission's determination in this case, that determination must be confirmed. It cannot be said that it was irrational or arbitrary for the majority on the Commission to conclude, on this record, that DCAS's disqualification of Huggins based on his prior convictions failed to comply with Correction Law § 752. That statute permits denial of employment on the basis of an applicant's past criminal record only where "there is a direct relationship between one or more of the previous criminal offenses and the specific . . . employment sought," or where "the granting of the employment would involve an unreasonable risk to property or to the safety or welfare of specific individuals or the general public." Here, the Commission majority rationally concluded, based on a consideration of the factors enumerated in Correction Law § 753, that there was no "direct relationship" between Huggins' past offenses and the position of watershed maintainer. It was also rational for the Commission to conclude that it would not present "a threat to public safety" for Huggins to hold that position, which is performed under supervision and does not involve dealing with the public. Concur—Friedman, J.P., Marlow, Gonzalez and Catterson, JJ.