OPINION OF THE COURT
Barbara Jaffe, J.
By notice of petition dated July 28, 2010, petitioner seeks, pursuant to CPLR article 78, an order annulling and remanding the March 23, 2010 determination made by respondents denying his application to continue working as a mortgage loan originator (MLO). He also seeks an order compelling respondents to review his application for an MLO license under the criteria set forth in Correction Law § 753 (1) and (2).
By notice of cross motion dated September 10, 2010, respondents cross-move for an order dismissing the petition on the grounds that petitioner has failed to meet the standards for a *164 writ of mandamus and has failed to state a constitutional claim. For the reasons that follow, the petition is denied and the proceeding is dismissed.
I. Facts
In 1993, when petitioner was 29 years old and soon after he had begun working in the mortgage banking field, he was charged and convicted in the Eastern District of New York with making a false statement in a mortgage loan application. (Affidavit of Robert Rampolla, dated July 28, 2010 [Rampolla aff], 1Í1Í13-14.) In 1997, he received a permanent certificate of relief removing “all legal bars and disabilities to employment, license and privilege except those pertaining to firearms . . . and except the right to be eligible for public office” (Rampolla aff, exhibit A, at 1), and has worked for the past 13 years as an unlicensed MLO for various employers (Rampolla aff If 12). In February 2008, having satisfied all of the educational requirements for an MLO license and passed the written test, he applied to the New York State Banking Department (Banking Department) for licensing under the Nationwide Mortgage Licensing System. {Id. 1117.)
By letter dated March 23, 2010, the Banking Department denied petitioner’s application to engage in MLO activities based on his prior conviction and in reliance on newly enacted sections of article 12-E of the Banking Law. (Rampolla aff, exhibit B. ) By letter dated July 19, 2010, petitioner’s appeal of the decision was denied by the Deputy Superintendent and Counsel for the Banking Department, who opined that “the New Article 12-E is lawfully written” and “has been applied correctly in [petitioner’s] case,” and that the new statute “would survive judicial scrutiny,” thus concluding that “the Department is bound by the New York Legislature’s mandate that [petitioner], as a result of his felony conviction, is not qualified to perform the duties of an MLO.” (Rampolla aff, exhibit C.)
Shortly thereafter, petitioner filed the instant petition, along with an order to show cause seeking a temporary restraining order to enjoin respondents from compelling petitioner’s employer to suspend his employment on the basis of his felony conviction. I declined to issue the order.
II. Contentions
Petitioner argues that the denial of his MLO application is arbitrary and capricious, and asks that the court annul it or *165 remand it to respondents for further consideration under the criteria set forth in Correction Law § 753, which mandates the consideration of his certificate of relief. He claims that respondents improperly ignored the Correction Law when considering his application absent any explicit preclusion of its consideration in article 12-E. Rather, he maintains, the more than 30-year legislative history and intent to eliminate bias against ex-offenders and require public agencies to deal equitably with them reflects that his prior conviction ought not result in the automatic denial of the license, and that Correction Law § 701 contains no exceptions precluding consideration of the factors set forth in Correction Law § 753 (1) and (2) when reviewing an application pursuant to article 12-E of the Banking Law. Rather, that apart from the exceptions set forth in Correction Law § 701 (2), the conviction of a crime does not result in an automatic forfeiture of a license except for a license issued pursuant to the Penal Law, and “notwithstanding any other provision of law.” (Petitioner’s mem of law in support of article 78 proceeding and preliminary injunction, dated July 28, 2010.)
Petitioner also asserts that the Banking Department delayed processing his application pending the amendment of article 12-E, that the application of article 12-E violates the Contract Clause of the United States Constitution because his career as an MLO will be terminated, that he has been deprived of his due process rights as he is now precluded from pursuing his livelihood, and that the stigma of his 17-year-old conviction has been needlessly resurrected. (Rampolla aff If 26.)
According to respondents, after the passage of title V of the Housing and Economic Recovery Act of 2008 in July 2008, the Banking Department began employing the minimum licensing standards in reviewing all MLO applications (affirmation of Gene C. Brooks, Esq., dated Sept. 9, 2010 [Brooks aff], 1i 12; respondents’ mem of law at 9), and the change in article 12-E arose from the “imprudent origination of residential mortgage loans,” which caused the collapse of the housing market (Brooks aff If 23; respondents’ mem of law at 20). Respondents rely on the legislative findings set forth in article 12-E, wherein it is provided that the new law applies “[notwithstanding any other law” (Banking Law § 599-e [1]), and argue that the new provisions supersede the prior law, and that if not, they would be rendered meaningless. And, having failed to incorporate Correction Law § 753 into the new provisions, the Legislature thereby created an automatic preclusion of prior felony offenders from *166 being licensed notwithstanding the Correction Law. (Brooks aff 1159.)
III. Analysis
A. Article 78
The only questions which may be raised in a proceeding to challenge action or inaction by a state or local government agency are, in pertinent part:
“1. whether the body or officer failed to perform a duty enjoined upon it by law; or . . .
“3. whether a determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion” (CPLR 7803; see CPLR 7801).
In reviewing an administrative agency’s determination as to whether it is arbitrary and capricious, the test is whether the determination “is without sound basis in reason and is generally taken without regard to the facts.” (Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, 231 [1974]; Matter of E.W. Tompkins Co., Inc. v State Univ. of N.Y., 61 AD3d 1248, 1250 [3d Dept 2009], lv denied 13 NY3d 701 [2009]; Matter of Mankarios v New York City Taxi & Limousine Commn., 49 AD3d 316, 317 [1st Dept 2008]; Matter of Soho Alliance v New York State Liq. Auth., 32 AD3d 363, 363 [1st Dept 2006]; Matter of Kenton Assoc. v Division of Hous. & Community Renewal, 225 AD2d 349 [1st Dept 1996].)
Here, as the Banking Department relied on the newly enacted Banking Law article 12-E in denying petitioner an MLO license, it must be determined whether petitioner has demonstrated that in doing so, it failed to perform a duty enjoined upon it by law, violated lawful procedure, or was affected by an error of law or was arbitrary and capricious or abused its discretion.
B. Banking Law Article 12-E
1. Recent Enactment
The Banking Department, among other activities, regulates financial services providers such as mortgage brokers, mortgage bankers and MLOs, who are licensed and operate in New York State. (Brooks aff If 10.) Banking Law article 12-E, §§ 599-a through 599-r, governs the state licensing requirements of MLOs. In 2009, it was amended in response to Congress’s enactment, on July 30, 2008, of title V of the Housing and Economic Recovery Act of 2008, also known as the S.A.EE. Mortgage *167 Licensing Act (the Act). The Act sets forth new minimum licensing standards for MLO applicants in order to “increase uniformity, reduce regulatory burden, enhance consumer protection, and reduce fraud” (12 USC § 5101). It contains no provision governing MLO applicants with felony convictions.
New York, in enacting the new law, had responded to a warning from the federal government that absent a state’s adherence to the Act’s minimum licensing standards, the Department of Housing and Urban Development would assume responsibility for state MLO licensing. (Rampolla aff, exhibit F, at 1; Brooks aff 1Í 46.) Section 599-a thus provides as follows:
“The legislature deems it necessary, in order to enhance consumer protection, reduce fraud and ensure the public welfare, that mortgage loan originators who originate mortgage loans on residential real property be subject to regulation by the superintendent and that such regulation be consistent with Title V of The Housing and Economic Recovery Act of 2008, also known as the S.A.F.E. Mortgage Licensing Act, as it may be amended from time to time, and regulations thereunder or interpretations thereof, that may be adopted from time to time by the Secretary of the U.S. Department of Housing and Urban Development.”
In memoranda supporting the new legislation, it is specifically noted that no longer will applicants who have been convicted of a felony involving fraud, dishonesty, breach of trust or money laundering be eligible for an MLO license, absent a pardon. (Rampolla aff, exhibit F, at 1.)
Thus, as amended, Banking Law § 599-e provides, in pertinent part, as follows:
“1. Findings. Notwithstanding any other law, the superintendent shall not issue a mortgage loan origination license unless he or she makes, at a minimum, the following findings: . . .
“(b) No felony conviction. That the applicant has not been convicted of, or pled guilty or nolo contendere to, a felony in a domestic, foreign, or military court:
“(i) During the seven-year period preceding the date of the application for licensing; or
“(ii) At any time preceding such date of application, if such felony involved an act of fraud, dishonesty, or a breach of trust, or money laundering, provided *168 that for purposes of this subdivision, the superintendent may, in his or her discretion, disregard a conviction where the felon has been pardoned.”
These provisions are identical to those set forth in the Act.
2. Prior Law
Before the enactment of the Act, the licensing of MLO applicants with a prior felony conviction was governed by article 23-A of the Correction Law (§§ 750-755), which was enacted in 1976 to:
“eliminate the effect of bias against ex-offenders which prevented them from obtaining employment ... by imposing an obligation on employers and public agencies to deal equitably with ex-offenders while also protecting society’s interest in assuring performance by reliable and trustworthy persons. Thus, the statute sets out a broad general rule that employers and public agencies cannot deny employment or a license to an applicant solely based on status as an ex-offender.” (Matter of Bonacorsa v Van Lindt, 71 NY2d 605, 611 [1988].)
Correction Law § 752 thus prohibits unfair discrimination against persons previously convicted of criminal offenses who apply for a license or employment.
The denial of a license, however, could be based on a finding of “a direct relationship between one or more of the previous criminal offenses and the specific license or employment sought or held by the individual,” or where “the issuance or continuation of the license or the granting or continuation of the employment would involve an unreasonable risk to property or to the safety or welfare of specific individuals or the general public.” (Correction Law § 752 [1], [2].) Factors considered in determining whether to issue a license to one previously convicted of a felony included New York’s public policy “to encourage the licensure and employment of persons previously convicted of one or more criminal offenses,” the specific duties and responsibilities necessarily related to the license or employment sought, the time elapsed since the conviction, the age of the applicant when convicted, the seriousness of the offense, and the bearing, if any, of the nature of the criminal offense on the applicant’s ability to perform his or her duties. (Correction Law § 753 [1].) Pursuant to Correction Law § 753 (2), public agencies and private employers were required to consider the applicant’s possession of a certificate of relief from civil disabilities which nec *169 essarily created a presumption of rehabilitation with respect to the offense or offenses specified therein. Thus, in addition to the factors set forth in Correction Law § 753 (1), the Banking Department had been required to consider an applicant’s possession of a certificate of relief when determining whether to issue a license to a felon. (Brooks aff 1i 13.)
A certificate of relief relieves eligible offenders of any forfeiture or disability, and removes any bar to employment automatically imposed by law by reason of a conviction of a crime or offense specified therein. (Correction Law § 701 [1].) More particularly, and ‘ ‘ [notwithstanding any other provision of law, except subdivision five of section twenty-eight hundred six of the public health law or paragraph (b) of subdivision two of section eleven hundred ninety-three of the vehicle and traffic law,” a certificate of relief from civil disabilities held by an eligible offender, and if specified therein, will not result in an
“automatic forfeiture of any license, other than a license issued pursuant to section 400.00 of the penal law, to a person convicted of a class A-I felony or a violent felony offense, as defined in subdivision one of section 70.02 of the penal law, permit, employment, or franchise, including the right to register for or vote at an election, or automatic forfeiture of any other right or privilege” (Correction Law § 701 [2]).
The certificate also prevents the prior conviction from being deemed one “within the meaning of any provision of law that imposes, by reason of a conviction, a bar to any employment, a disability to exercise any right, or a disability to apply for or to receive any license, permit, or other authority or privilege” (id.).
However, a certificate of relief does not prevent any “judicial, administrative, licensing or other body, board or authority from relying upon the conviction specified therein as the basis for the exercise of its discretionary power to suspend, revoke, refuse to issue or refuse to renew any license, permit or other authority or privilege.” (Correction Law § 701 [3].)
3. Legislative Intent
As neither Correction Law § 753 nor certificates of relief are referenced in the new statute and absent any indication that the Legislature was unaware of Correction Law § 753 and its prior integration with Banking Law article 12-E, “an irrefutable inference must be drawn that what is omitted or not *170 included was intended to be omitted or excluded.” (Patrolmen’s Benevolent Assn. of City of N.Y. v City of New York, 41 NY2d 205, 208-209 [1976].) Consequently, applicants with an unpardoned felony conviction involving fraud, dishonesty, or a breach of trust, as of July 11, 2009, the effective date of article 12-E, apparently cannot be licensed as an MLO in New York State.
By contrast, Banking Law § 369 (6), which governs the licensing of those providing check-cashing services, retains an exception for those convicted of a crime who possess a certificate of relief in that they are not automatically denied a license. They must still, however, be approved by the Banking Department which may deny a license notwithstanding the applicant’s possession of a certificate of relief. (Matter of City Servs., Inc. v Neiman, 77 AD3d 505 [1st Dept 2010].)
Thus, although petitioner has failed to satisfy his burden of demonstrating that the determination of the Banking Department is wrong, even if Correction Law § 753 had been considered, there would have been no guarantee that he would have received or retained a license given the discretion accorded the Banking Department in Correction Law § 701 (3) to deny a license based on a prior unpardoned conviction.
That both Correction Law § 701 and Banking Law § 599-e apply “[notwithstanding any other law” is immaterial, as the latter was enacted after the former, and thus, the Legislature could not have intended that the Correction Law apply notwithstanding any subsequently enacted legislation such as the newly enacted provisions of the Banking Law. Rather, the Legislature signaled its intentional omission from article 12-E of any requirement that an applicant’s certificate of relief be considered.
4. Delay in Processing Petitioner’s Application
In assessing the reasonableness of an administrative agency’s delay in rendering a determination, a court should consider: “(1) the nature of the private interest allegedly compromised by the delay; (2) the actual prejudice to the private party; (3) the causal connection between the conduct of the parties and the delay; and (4) the underlying public policy advanced by governmental regulation.” (Matter of Louis Harris & Assoc. v deLeon, 84 NY2d 698, 703-704 [1994]; Matter of Cortlandt Nursing Home v Axelrod, 66 NY2d 169, 178 [1985].) Based on the following analysis of these factors, I find that petitioner has not established that respondents’ delay in processing his application constitutes a basis for granting the relief requested.
*171 i. Nature of the Interest
Here, petitioner’s interest in being licensed as an MLO does not rise to the level of a property right (see infra III. B. 6.). Rather, it is an interest contingent on the meeting of certain legal requirements.
ii. Actual Prejudice and iii. Causal Connection Between the Conduct of the Parties and the Delay
Once the Act was passed, respondents reviewed MLO applications pursuant to its requirements, as opposed to those set forth in the Correction Law, which is implicitly preempted by the Act. (US Const, art VI, cl 2 [federal laws “shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding”]; Guice v Charles Schwab & Co., 89 NY2d 31, 39 [1996], cert denied 520 US 1118 [1997]; People v First Am. Corp., 76 AD3d 68, 71-72 [1st Dept 2010].) Moreover, the delay in reviewing petitioner’s application once the Act was passed was no more than five to six months and again, there is no evidence that respondents awaited its passage in order to deprive petitioner of a license. Even when an agency is required to render a decision within certain time limits, and there is no evidence of any such limitation here, “[a]bsent a clear and distinct intention expressed to limit its power, the statutory time limitation will be considered as directory only.” (Matter of 140 W. 57th St. Corp. v State Div. of Hous. & Community Renewal, Off of Rent Admin., 130 AD2d 237, 241 [1st Dept 1987]; Matter of Dickinson v Daines, 15 NY3d 571 [2010].)
iv. Underlying Public Policy
While some may argue about whether the new enactments advance the public policy underlying them, the federal and state legislatures certainly believed that they do.
5. Contract Clause
Article I, § 10 of the United States Constitution provides that “[n]o State shall . . . pass any . . . Law impairing the Obligation of Contracts.” (19th St. Assoc. v State of New York, 79 NY2d 434, 442 [1992].) However, even if a state impairs a contract, the Court of Appeals has held that “the State may avoid a finding of unconstitutional impairment by demonstrating the existence of ‘a significant and legitimate public purpose . . . such as the remedying of a broad and general social or economic problem.’ ” (Id. at 443, quoting Energy Reserves Group, Inc. v Kansas Power & Light Co., 459 US 400, 411-412 [1983].)
*172 While the Banking Department relied on a 17-year-old conviction to deny petitioner the MLO license, which was not a matter of contract, article 12-E does not preclude him from pursuing other employment and does not preclude all ex-offenders from becoming MLOs, just those with a specified criminal history directly related to the mortgage loan industry. Thus, as the ability of felons to obtain employment and licensing has not been completely eradicated by the recent enactments, there is no basis for finding any potential violations of the Contract Clause of the United States Constitution.
6. Due Process
“To succeed on a claim for deprivation of property without due process of law, ‘a plaintiff must first identify a property right, second show that the state has deprived him of that right, and third show that the deprivation was effected without due process.’ ” (Sash v United States, 2009 WL 3007379, *5, 2009 US Dist LEXIS 90866, *15 [SD NY 2009].) “An interest in employment does not rise to the level of a property right until the individual has a ‘legitimate claim of entitlement to it.’ ” (Burka v New York City Tr. Auth., 680 F Supp 590, 610 [SD NY 1988].) “In considering whether a legitimate claim of entitlement, or right, is granted by State law, ‘the focus is on the relevant statute, regulation, or contract establishing eligibility for the benefit at issue.’ ” (Matter of Daxor Corp. v State of N.Y. Dept. of Health, 90 NY2d 89, 98 [1997], cert denied 523 US 1074 [1998].)
Here, the departmental superintendent of the Banking Department is authorized by law to make rules which, in his judgment, are necessary to enforce article 12-E (Banking Law § 599-o), and in any event, the issuance of a certificate of relief never guaranteed success in obtaining a license. Consequently, absent automatic entitlement to be licensed as an MLO, even upon application of the Correction Law, petitioner has not established a legitimate claim of entitlement to the license, and thus has not shown that he has a property interest in being licensed. (Compare Matter of City Servs., Inc., 77 AD3d at 505 [petitioner “had no property interest in licensure or a due process right to a hearing in connection therewith”] with Matter of Gould v Board of Educ. of Sewanhaka Cent. High School Dist., 81 NY2d 446, 451 [1993] [tenured professor has vested contract right].)
7. Damage to Reputation
Although respondents alerted petitioner’s employer that he had been denied the MLO license, there was no public dis *173 semination of it, and as his employer was previously aware of his certificate of relief, it was already aware of his conviction. Also, information regarding petitioner’s prior conviction is a matter of public record which does not constitute dissemination of the underlying information. Consequently, petitioner has failed to establish that his reputation has been damaged as a result of respondents’ determination.
IV Summary
While there is no dispute that petitioner is rehabilitated and able to perform the functions of an MLO without risk of engaging in the conduct that led to his conviction, based on the foregoing considerations, there is no factual or legal basis for finding that respondents’ denial of petitioner’s application is arbitrary and capricious or without sound basis in fact or reason. Rather, their review of petitioner’s application was undertaken in compliance with the law which does not permit consideration of the Correction Law or any other law.
The court has considered petitioner’s other contentions and finds them without merit.
V Conclusion
For all of the above-stated reasons, it is hereby adjudged, that the petition is denied and the proceeding is dismissed; and it is further ordered, that the cross motion of the respondents Banking Department of the State of New York and Rholda Ricketts, Deputy Superintendent of Banks, is granted in its entirety.