OPINION OF THE COURT
Carol Robinson Edmead, J.
In this CPLR article 78 proceeding against the City of New York and the New York City Department of Correction (DOC) (collectively, respondents), Gary Graves seeks an order: reversing, annulling, and setting aside the revocation of his security “license”; remanding the matter to respondents with a direction that they reinstate his security license for Rikers Island Correctional Facility; and awarding him damages for lost wages, benefits and other incidental damages, compensatory damages for emotional distress, and attorneys’ fees, costs, and expenses incurred in prosecuting this action.
This proceeding stems from the New York City Department of Investigation’s probe into Corizon Health Inc., with whom DOC contracted to provided medical and mental health services to inmates at Rikers Island. The investigation (commenced after the arrest of a nurse at Rikers Island in Sept. 2014) revealed, inter alia, not only systemic failures of Corizon (and DOC officials) to perform criminal background checks of hundreds of Corizon employees, but also unchecked opportunities for employees to develop intimate relationships with prisoners whom they were to serve, and the smuggling of drugs and weapons into the prison by Corizon and DOC employees. As a result, the City of New York declined to renew its contract with Corizon, and transferred the responsibility of inmate health care to the Health and Hospitals Corporation.
In the course of this transition, in July 2015, criminal background checks were performed of those still employed with Corizon at Rikers Island, including the petitioner herein, which resulted in the revocation of petitioner’s security clearance. Petitioner appealed the decision and requested that the reasons for the revocation be set forth in writing, to no avail.[1]
Petitioner’s instant proceeding ensued.
*897 Factual Background[2]
According to petitioner, in December 2001, he applied for a security “license” from respondents and paid a $75 fee for a criminal background check in order to be cleared to work at Rikers Island (petition ¶ 26). Petitioner fully disclosed his criminal background on his application, which he states included convictions between 1972 and 1987 of weapons and cocaine possession, possession of stolen mail, conspiracy, and forgery.[3] Petitioner asserts that he was incarcerated from approximately 1987 until his release on parole on May 29, 1992.
Since his release in 1992 (and since his last conviction in Aug. 1987 almost 30 years ago), petitioner has not been arrested, was released from probation and pardoned for one of his drug possession charges,[4] and has been a very successful and productive member of society. For example, petitioner graduated from Fordham University magna cum laude and earned a Master’s degree in social work, attaining licensure to work as a licensed clinical social worker. During that period, petitioner became a member of the National Association of Social Workers (NASW), and received the Black Men of Distinction Award from New York State Senator Marty Markowitz for his contributions to community service, entrepreneurial activities, and personal achievement. Petitioner also passed New York State’s Credentialed Alcoholism and Substance Abuse Counselor exam, and helped prepare students for the exam. Petitioner worked as a supervisor for the Addiction Research and Treatment Corporation in Brooklyn, became a provider of *898 clinical screening and assessment services for impaired driver offenders, and was a director for a women’s shelter in Brooklyn, responsible for 48 employees and compliance with state and federal regulations. Petitioner also worked as a part-time social worker for the Lower Eastside Service Center in Manhattan, providing psychotherapy to inmates pursuant to New York State parole mandate, and organizing therapy groups to combat domestic violence. And, petitioner was a part-time adjunct professor at St. Joseph’s College in'Brooklyn, teaching courses in areas of health and substance abuse.
After petitioner’s application to work at Rikers Island was granted (¶ 27), in December 2001, he began “his employment as a licensed clinical social worker at Rikers Island for the City of New York’s correctional healthcare provider” Corizon (¶¶ 27-28). In this capacity, petitioner counseled approximately 10 to 15 individual inmates each day, and never received any verbal or written warnings, admonishments, suspensions or disciplinary action.
Since he began working at Rikers Island, petitioner was issued a Certificate of Good Conduct from the State of New York Division of Parole, which “provides relief from disabilities and bars to employment automatically imposed by New York State law as a result of [his] conviction.” Petitioner was inducted to the Academy of Certified Social Workers, and certified by the NASW as a “Social Worker in Health Care,” as well as an “Advanced Children, Youth & Family Social Worker,” attaining the designations “C-SWHC” and “C-ACYFSW,” respectively. Petitioner worked as a part-time social worker for Abundant Life Agency Early Intervention Program in Brooklyn, helping children and families receive social services and counseling. Petitioner founded a nonprofit organization in Brooklyn, Gifted Community Services, Inc., which provides HIV education and individual and group psychotherapy sessions, crisis intervention, suicide prevention and services for addressing bullying, domestic violence and substance abuse for at-risk youths, ex-offenders and the mentally ill. Petitioner was granted an Education and Training Provider Certificate by the State of New York, authorizing him to teach specific course work in the field of mental health, and he later assumed responsibility of a rehabilitation program called “The Bridge Beyond,” which boasted 100% attendance of the inmates he was charged with counseling five days per week. Petitioner also received a commendation from New York State Senator Bill Perkins for his *899 exemplary service to the community and to the State of New York.
. In support of his petition, petitioner argues that the revocation of his “security license” was arbitrary, capricious, and in violation of Correction Law, article 23-A, §§ 752 and 753. Petitioner argues that respondents failed to apply all eight factors set forth in section 753 before making the decision to revoke his security license, and that any rational application of these factors tips in favor of permitting petitioner to retain his security license.[5] Petitioner argues that there is no direct relationship between his convictions from nearly 30 years earlier and the license he held on Rikers Island for 14 years, especially since he had already successfully held the security license since December 2001 and never once had any disciplinary issues. Further, respondents failed to consider the affirmative steps he took evidencing good conduct and rehabilitation, failed to inform him that they were statutorily required to evaluate the eight factors, and failed to invite him to submit information regarding his rehabilitation and good conduct. Respondents also failed to provide any response to petitioner’s December 11, 2015 request, in direct violation of the statute. The revocation was based on petitioner’s convictions from nearly 30 years ago, after which petitioner has never faced any allegation of misconduct, either criminal or administrative. This record of exemplary conduct alone supports his 14-year history holding the subject license, and mitigates against any attempt by respondents to rationally claim there was any factual basis to revoke his security license. Petitioner has worked since December 2001 with the very license at issue herein.
Further, the appeal letter provided no details or statement setting forth the reasons for the revocation of his security license, and such failure deprives the petitioner of his statutory right to court review.
In their answer, respondents contend that DOC granted petitioner’s security clearance to enter Rikers Island in connection with his employment at Corizon, and (upon information and belief) DOC did not conduct a criminal history check at the time it granted petitioner access.
*900 Respondents contend that DOC’s revocation of petitioner’s security clearance was rational. Every employee of Corizon whose security clearance was revoked was invited to apply for reconsideration by a three-member panel,[6] which considered, on a case-by-case basis, the severity of the crime, how long ago it was committed, existence of tenure without incident, any references and recommendations from current employers, and any information provided by the individual, factors which mirror the factors set forth in article 23-A. On November 12, 2015, petitioner’s appeal was evaluated according to these five factors, and DOC’s three-member panel unanimously decided to uphold the revocation of petitioner’s clearance. A presumption of rehabilitation does not give one a per se entitlement to a license or employment. Further, petitioner’s assertion that a person’s criminal history has “no direct relationship” to his being granted free access in facilities housing thousands of accused criminals, as well as intimate access to those accused criminals, lacks merit.
In any event, the Correction Law expressly excludes from the definition of “employment” “membership in any law enforcement agency” (Correction Law § 750 [5]). And although the definition of “license” does not expressly exempt licenses issued by law enforcement agencies or related to access to law enforcement agency facilities, the rationale for the law enforcement exemption and the First Department’s determination that membership includes civilian employees, indicate that DOC, a law enforcement agency, should be exempted from having to consider the Correction Law in granting clearance for access to its facilities to third-party health providers with extensive criminal histories.
And, any relief available to petitioner is strictly limited to remand to DOC for consideration of the enumerated factors set forth in the Correction Law. Respondents were never petitioner’s employer, and therefore did not terminate petitioner’s employment. The decision to terminate petitioner’s employment rested solely with Corizon, and indeed, upon information and belief, following his termination petitioner entered into a settlement agreement with Corizon, for which he received severance. Therefore, because the damages sought by petitioner are not incidental, and because respon *901 dents, as third-party non-employers not liable for the provision of wages or benefits, cannot be sued for such damages in a separate action, petitioner’s request for damages should be denied. And, because petitioner is not contractually or statutorily entitled to attorneys’ fees, his request for such fees should be denied.
In reply, petitioner points out that respondents’ submissions establish that they created a per se rule that resulted in the automatic revocation of an employee’s license without first considering the statutory factors, and then only addressed other factors upon appeal by an employee. The factors also did not include the mandatory factors outlined in the statute. Respondents’ clear violation of the statute demonstrates that the revocation was arbitrary and capricious.
Further, the exemption cited to by respondents applies to those employed by a law enforcement agency and not those who hold a license granted by a law enforcement agency. The statute’s separate definition of “License” does not include a law enforcement exemption. Petitioner was not a member of law enforcement, but merely a holder of a security clearance, and therefore, respondents are not exempt from compliance with the statute. And, petitioner is entitled to the monetary damages he seeks.
Discussion
“Judicial review of an administrative determination pursuant to CPLR article 78 is limited to inquiry into whether the agency acted arbitrarily or capriciously” (Matter of City Servs., Inc. v Neiman, 77 AD3d 505, 507 [1st Dept 2010], citing J.W.J. Check Cashing Corp., 91 AD2d 1034 [1983]). The “Court may not substitute its own judgment for that of the agency, particularly with respect to matters within its expertise” (City Servs., Inc., citing Flacke v Onondaga Landfill Sys., 69 NY2d 355, 363 [1987]).
Article 23-A, § 752 of the Correction Law states as follows:
“No application for any license or employment, and no employment or license held by an individual, to which the provisions of this article are applicable, shall be denied or acted upon adversely by reason of the individual’s having been previously convicted *902 of one or more criminal offenses, or by reason of a finding of lack of ‘good moral character’ when such finding is based upon the fact that the individual has previously been convicted of one or more criminal offenses, unless:
“(1) there is a direct relationship between one or more of the previous criminal offenses and the specific license or employment sought or held by the individual; or
“(2) the issuance or continuation of the license or the granting or continuation of the employment would involve an unreasonable risk to property or to the safety or welfare of specific individuals or the general public.” (Emphasis added.)
Article 23-A, § 753 of the Correction Law states as follows:
“1. In making a determination pursuant to section [752], the public agency or private employer shall consider the following factors:
“(a) The public policy of this state, as expressed in this act, to encourage the licensure and employment of persons previously convicted of one or more criminal offenses.
“(b) The specific duties and responsibilities necessarily related to the license or employment sought or held by the person.
“(c) The bearing, if any, the criminal offense or offenses for which the person was previously convicted will have on his fitness or ability to perform one or more such duties or responsibilities.
“(d) The time which has elapsed since the occurrence of the criminal offense or offenses.
“(e) The age of the person at the time of occurrence of the criminal offense or offenses.
“(f) The seriousness of the offense or offenses.
“(g) Any information produced by the person, or produced on his behalf, in regard to his rehabilitation and good conduct. [And]
“(h) The legitimate interest of the public agency or private employer in protecting property, and the safety and welfare of specific individuals or the general public.
*903 “2. In making a determination pursuant to section [752], the public agency or private employer shall also give consideration to a certificate of relief from disabilities or a certificate of good conduct issued to the applicant, which certificate shall create a presumption of rehabilitation in regard to the offense or offenses specified therein.”
Correction Law § 750, entitled “Definitions,” states as follows:
“(4) ‘License’ means any certificate, license, permit or grant of permission required by the laws of this state, its political subdivisions or instrumentalities as a condition for the lawful practice of any occupation, employment, trade, vocation, business, or profession. Provided, however, that ‘license’ shall not, for the purposes of this article, include any license or permit to own, possess, carry, or fire any explosive, pistol, handgun, rifle, shotgun, or other firearm.
“(5) ‘Employment’ means any occupation, vocation or employment, or any form of vocational or educational training. Provided, however, that ‘employment’ shall not, for the purposes of this article, include membership in any law enforcement agency.”
It cannot be disputed that respondents failed to consider all eight factors, and that the record contains substantial evidence of petitioner’s rehabilitation. And, although respondents are not required to point to any “contemporaneously created record” demonstrating that “it considered each of the eight [statutory] factors” (Matter of Acosta v New York City Dept. of Educ., 16 NY3d 309, 319 [2011] [employer’s failure to submit contemporaneous business records evidencing compliance with Correction Law § 753 does not render the employment determination arbitrary and capricious]), respondents admit in their answer that they considered only five factors which are similar to those required by statute (answer ¶ 95).
Nevertheless, this court finds that based on the definition of employment above, and the cases Matter of Belgrave v City of New York (137 AD3d 439 [1st Dept 2016]), cited by respondents, and Matter of Little v County of Westchester (36 AD3d 616 [2d Dept 2007]), Correction Law §§ 752 and 753 do not ap *904 ply to DOC’s revocation of petitioner’s security clearance to work at Rikers Island.[7]
Belgrave v City of New York is instructive. In Belgrave, the issue was whether civilian employment as a Police Communications Technician with the New York City Police Department (NYPD) was something different from “membership” in a law enforcement agency, and therefore subject to the protections of Correction Law §§ 752 and 753. For purposes of appeal, it was deemed that NYPD denied the applicant based on her prior criminal conviction. Petitioner argued that “membership” applied only to persons with the authority to enforce the law (i.e., police officers and peace officers), and not to those seeking civilian employment. The Court cited the Merriam-Webster dictionary definition of “membership” as “ ‘the state of belonging to or being a part of a group or an organization — the state of being a member — all the people or things that belong to or are part of an organization or a group’ . . . [http:// www.merriam-webster.com/dictionary/membership (accessed Feb. 18, 2016)]” (137 AD3d at 441).
Thus, the Court held that membership applied to anyone. who sought to be hired by a law enforcement agency, and rejected petitioner’s attempt to minimize the nature of the position. The Court noted that
“PCTs (911 Operators/Radio Dispatchers) take calls, obtain critical information and are the first point of contact between the public and law enforcement. By dispatching police resources and performing other clerical and administrative duties related to the provision of emergency service, a PCT also has access to confidential information, including nonpublic activities. The civilian nature of the job does not determine its importance in NYPD operations” (137 AD3d at 441-442).
Therefore, the First Department held that since the applicant sought “membership” in a law enforcement agency, the NYPD was not required to consider the eight statutory factors.
In Little v County of Westchester, the Second Department held that the Commissioner of Correction properly exercised his discretion in determining that the petitioner’s previous misdemeanor convictions rendered him unfit for the position of *905 correction officer and disqualifying the petitioner from eligibility for appointment to that position. More importantly, and as relevant herein, the Court held that the Commissioner “was not required to consider the factors set forth in Correction Law article 23-A before disqualifying the petitioner, since employment with a law enforcement agency is specifically exempted from the reach of that statute” (36 AD3d at 617; see Correction Law § 750 [5]).
Although petitioner did not seek employment with DOC, petitioner’s application for a “license” to work within the confines of the DOC facilities renders him an applicant for “membership” with DOC. Petitioner acknowledges, in his petition, that upon receipt of his security clearance, he began to work “for the City of New York’s correctional healthcare provider” Corizon. The purpose of a security clearance to work within the confines of DOC’s Rikers Island facility is to grant petitioner access, as afforded to DOC employees, in order to serve the population of prisoners housed at the facility. Though not an employee of DOC, but an employee of a contracted company, Corizon, petitioner was ostensibly cloaked in the apparatus of an employee of DOC, and to the degree he was engaged in providing services to prisoners on behalf of DOC, the court interprets “membership” broadly to include contracted employees working at DOC’s facilities. Given that petitioner seeks to maintain access to work at a DOC facility, petitioner sought “membership” in the DOC, a law enforcement agency.
And, it is noted that none of the cases applying the protections of section 753’s eight factors uncovered by this court or cited to by petitioner involve applications to work for or at a law enforcement agency or facility, but instead involved determinations by non-law enforcement agencies, such as the Board/Department of Education, Department of Buildings, the Civil Service Commission, and various New York City and state agencies (Taxi and Limousine Commission, Department of Consumer Affairs, Banking Department, Department of Environmental Conservation) to name a few.[8] Licenses granted or denied have included operation of school or transit busses, *906 work as an administrative assistant, teacher, site safety-manager, custodian, horse trainer, engineer, home improvement, mortgage origination, certified public accountant, firefighter, as examples. And, in instances of employment as a “special officer,” the entities involved were either Health and Hospitals or Department of .Citywide Administrative Services, neither of which are considered “law enforcement” agencies.
This critical distinction renders petitioner’s case law materially distinguishable (cf. Matter of King v New York State Div. of Parole, 190 AD2d 423, 431 [1st Dept 1993] [overturning the board’s decision where “record clearly reveals that the denial of petitioner’s (parole) application was a result of the Board’s failure to weigh all of the relevant considerations”]; Matter of Formica Constr. Inc. v Mintz, 65 AD3d 686 [2d Dept 2009]; Matter of Exum v New York City Health & Hosps. Corp., 37 Misc 3d 1218[A], 2012 NY Slip Op 52078[U] [Sup Ct, Kangs County 2012]; Panessa v Limandri, 2011 NY Slip Op 32365[U] [Sup Ct, NY County 2011] [New York City Department of Buildings]; Matter of Soto v New York State Off. of Mental Retardation & Dev. Disabilities, 26 Misc 3d 1215[A], 2010 NY Slip Op 50103[U] [Sup Ct, Kings County 2010]; Matter of Gallo v State of N.Y., Off. of Mental Retardation & Dev. Disabilities, 37 AD3d 984 [3d Dept 2007]; Matter of Dellaporte v New York City Dept. of Bldgs., 106 AD3d 446 [1st Dept 2013]).
The court acknowledges that Correction Law § 753 (1) (a) states explicitly that it is “[t]he public policy of this state . . . to encourage the licensure and employment of persons previously convicted of one or more criminal offenses.” However, the Correction Law does not evoke a public policy to encourage the licensure and employment by law enforcement agencies of *907 persons convicted of one or more offenses to work as members in law enforcement agencies. As a result, this decision is not inconsistent with the aim of the Correction Law, even as stated in Matter of Glucksman (57 AD2d 205, 207 [1st Dept 1977]), which is “removing [the] senseless discrimination regarding criminal offenders” as the aim is directed at non-law enforcement employers.
Therefore, to the extent petitioner seeks to work under the auspices of DOC via his employer Corizon, his application for security clearance falls within the meaning of “membership” in such law enforcement agency, and since DOC is exempt from compliance with article 23-A, DOC cannot be held to have violated article 23-A. Consequently, notwithstanding petitioner’s Herculean rehabilitation efforts, the court is constrained by law to dismiss.
Conclusion
Based on the foregoing, it is hereby ordered that the petition by Gary Graves for an order reversing, annulling, and setting aside the revocation of his security “license”; remanding the matter back to respondents with a direction that they reinstate his security license on Rikers Island Correctional Facility; and awarding him damages for lost wages, benefits and other incidental damages, compensatory damages for emotional distress, and attorneys’ fees, costs, and expenses incurred in prosecuting this action, is denied, and the proceeding is hereby dismissed.

. According to the petitioner, in response to petitioner’s appeal, Roderick Williams, DOC’s Acting Deputy Commissioner, left petitioner a voicemail on November 20, 2015 simply informing petitioner that his appeal was denied. On November 20, 2015, petitioner then requested that Williams provide a *897 written statement of the reasons for the revocation. On November 27, 2015, petitioner received a letter from Williams dated November 20, 2015, stating that his appeal was reviewed, that “[t]he Appeal Board has upheld the Investigation Division’s original decision and your security clearance has been revoked” and that “this determination is final” (the appeal letter). On December 11, 2015, petitioner sent a written request to respondents pursuant to Correction Law § 754, requesting a written statement setting forth the reasons for the revocation of his security clearance, to which petitioner received no response.

. Unless otherwise indicated, the following facts are undisputed for purposes of this application.

. Petitioner was convicted of possession of a dangerous weapon in January 1972; possession of stolen mail in May 1983; criminal possession of a weapon in the third degree in January 1987; possession of cocaine with intent to distribute on June 25, 1987; conspiracy in June 1987; and forgery in August 1987.

. In June 2000, petitioner received a pardon for his 1987 possession of cocaine with intent to distribute conviction by the South Carolina Department of Probation, Parole, and Pardon Services.

. Petitioner also contends that the New York State Human Rights Law (Executive Law § 296 [15]) and New York City Human Rights Law (Administrative Code of City of NY § 8-107 [10]) incorporate the article 23-A requirements.

. The panel comprised Williams, as well as Chief of Department Martin Murphy and Deputy Commissioner of Investigations Michael Blake.

. The court’s research failed to uncover any cases in which a law enforcement agency such as DOC was required to comply with Correction Law §§ 752 and 753.

. See Matter of Rennert v Connetquot Cent. Sch. Dist. (50 Misc 3d 1214[A], 2016 NY Slip Op 50107[U] [Sup Ct, Suffolk County 2016] [school bus driver position]); Matter of Acosta v New York City Dept. of Educ. (16 NY3d 309 [2011] [administrative assistant position at a nonprofit private organization that contracted with the DOE to provide special education services to disabled preschoolers]); Matter of Gorelik v New York City Dept. of Bldgs. (128 AD3d 624 [1st Dept 2015] [application for master fire suppres *906 sion piping contractor license]); Matter of City of New York v City Civ. Serv. Commn. (141 Misc 2d 276 [Sup Ct, NY County 1988] [position of provisional eligibility specialist]); Matter of Polednak v Levitt (167 AD2d 274 [1st Dept 1990] [position as City traffic device maintained); Matter of City of New York v New York City Civ. Serv. Commn. (30 AD3d 227 [1st Dept 2006] [position of watershed maintainer within the City’s Department of Environmental Protection]); Matter of Levine v N.Y.C. Taxi & Limousine Commn. (136 AD3d 1037 [2d Dept 2016] [application for license to operate for-hire vehicle]); Matter of Reyes v New York City Dept. of Consumer Affairs (8 Misc 3d 1009[A], 2005 NY Slip Op 51002[U] [Sup Ct, NY County 2005] [home improvement license]); Rampolla v Banking Dept. of the State of N.Y. (31 Misc 3d 161 [Sup Ct, NY County 2010] [mortgage loan originator license]); Matter of Al Turi Landfill v New York State Dept. of Envtl. Conservation (98 NY2d 758 [2002] [landfill owner’s application for a permit to expand a municipal solid waste disposal facility]).