OPINION OF THE COURT
Barbara Jaefe, J.
By notice of petition and verified petition, petitioner seeks an order and judgment pursuant to CPLR article 78: (1) declaring that respondents violated various statutes and regulations in an arbitrary and capricious manner which constituted an abuse of discretion and are thus null and void; (2) directing respondents to grant petitioner a security clearance and reinstate him to the same or similar position or, in the alternative, directing them to reconsider petitioner’s security clearance, or directing a trial of any triable issues raised; and (3) awarding petitioner fees and costs, including attorney fees. Respondents oppose.
*450 I. Pertinent Background
Petitioner, now 61 years old, has been licensed since 2006 by the New York State Office of Alcoholism and Substance Abuse Services as a credentialed alcohol and substance abuse counselor. In January 2008, he began working for Corizon correctional health care at Rikers Island as a substance abuse counselor. (Verified petition, dated Mar. 18, 2016.)
During the 1980s and 1990s, petitioner suffered from substance abuse issues, and was convicted of several crimes, including a 1981 felony for which he was issued a certificate of relief from disabilities, and 12 misdemeanor convictions, the most recent in 1998. At issue here is his conviction for misdemeanor assault in 1990. (Id.)
In early 2015, a Corizon employee was arrested for taking bribes to smuggle in tobacco and alcohol. Soon thereafter, a second employee was arrested for smuggling contraband into Rikers Island, and a third for smuggling in a straight edge razor. These arrests gave rise to serious concerns about events and procedures at Rikers Island, which resulted in a finding by the New York City Department of Investigation (DOI) that Corizon and respondent New York City Department of Correction (DOC) had failed to ensure that Corizon employees with access to inmates had been properly screened. DOI also found that Corizon employees had failed to provide proper medical and mental health services. DOI thus recommended that DOC run criminal history checks for employees of all companies that had access to Rikers Island. The New York City Health and Hospitals Corporation (HHC) did not renew Corizon’s contract after December 2015, and took over the management of Rikers Island. (Verified answer, dated Aug. 16, 2016; mem of law, dated Aug. 16, 2016.)
By letter dated May 22, 2015, Corizon advised its employees that DOC had requested that it fingerprint all of its employees with access to Rikers Island. Annexed to the letter was a directive from DOC and an Appendix A: Conviction Charges Rendering Individuals Ineligible for Security Clearance, pursuant to which petitioner’s misdemeanor assault conviction from 1990 rendered him ineligible for security clearance (DOC reference directive No. 4513R-A). (Verified petition.)
By letter dated November 3, 2015, Corizon notified petitioner that DOC had revoked his security clearance as of November 2, 2015. By email and certified mail, petitioner appealed the decision on the ground that no disciplinary issues had arisen *451 concerning his eight-year tenure at Rikers Island. He attached a recommendation from a Corizon supervisor. (Id.)
On November 13, 2015, Corizon advised petitioner that his employment with it had been terminated due to DOC’s revocation of his clearance. And on or about November 20, 2015, DOC informed petitioner that the Appeal Board had upheld the original decision, that his clearance thus remained revoked, and that the determination was final. (Id.) The same day, petitioner learned of the denial of his request to continue his employment with HHC after Corizon’s contract ended on December 31, 2015. (Id.)
According to respondents, DOC initially revoked the security clearances of 29 employees. Appeals of the revocations were decided by a three-member panel, and the factors to be considered were the severity of the crime, how long ago it was committed, the employee’s tenure without incident in DOC facilities, references and recommendations, and any other information submitted by the employee. Ultimately, of the 29 revocations appealed, 22 revocations were overturned and clearances reinstated. No evidence was submitted as to the reasons underlying any of the appeal determinations. (Verified answer, exhibit 3.)
II. Contentions
Petitioner asserts that respondents’ revocation of his license, security clearance, and denial of his continued employment violates article 23-A of the Correction Law for failing to render a fair and reasoned decision based on the factors required to be considered for a determination as to whether petitioner’s prior criminal record is directly related to his duties as a substance abuse counselor or whether his continued employment in that position would pose an unreasonable risk to persons or property. In violating article 23-A, petitioner alleges, respondents also committed an unlawful employment practice and violated the New York State and City Human Rights Laws. He maintains that respondents’ conduct in these regards is arbitrary and capricious and constitutes an abuse of discretion. (Verified petition.)
Respondents deny that their revocation of petitioner’s license, or security clearance, is arbitrary and capricious, and assert that their determination is rational as it is based on an individualized assessment of the severity of petitioner’s crime, how long ago it was committed, the duration of his employ *452 ment without incident, references and recommendations, and the information he provided. They concede that not every factor enumerated in the Correction Law is cited by the panel in determining petitioner’s appeal, and assert that because 22 of the 29 Corizon employees whose security clearances were initially revoked have been reinstated on appeal, the process is thereby demonstrably not pro forma, and maintain that petitioner’s lengthy criminal record warrants revocation. Alternatively, they argue that the law enforcement exemption to article 23-A relieves them of any requirement that they consider the aforementioned factors when issuing security clearances. (Mem of law, dated Aug. 16, 2016.)
In reply, petitioner argues that as it is undisputed that respondents revoked his clearance based solely on his misdemeanor, absent any consideration of the factors set forth in article 23-A, their determination is arbitrary and capricious. He observes that the factors allegedly used to determine his appeal do not include all of the requisite factors, and denies that the 22 reinstatements constitute evidence that respondents engaged in an impartial, individualized assessment of his application absent specific proof as to those results. Had respondents considered all of the required factors, petitioner asserts that their decision to uphold his revocation would be irrational as his criminal and substance abuse history renders him uniquely qualified to counsel inmates on substance abuse issues, his disqualifying misdemeanor occurred 25 years ago, his last conviction was 17 years ago, his sole felony conviction was 30 years ago and he received a certificate of relief from disabilities for it, and he performed his duties at Rikers Island without incident for eight years. He also argues that the law enforcement exemption applies only to “employment,” and not to a license. (Mem of law, dated Aug. 31, 2016.)
III. Governing Law
A. CPLR Article 78
In reviewing an administrative agency’s determination as to whether it is arbitrary and capricious under CPLR article 78, the test is whether the determination “is without sound basis in reason and . . . without regard to the facts.” (Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, 231 [1974]; Matter of Kenton Assoc. v Division of Hous. & Community Renewal, 225 AD2d 349 [1st Dept 1996].) Moreover, the determination of an administrative agency,
*453 “acting pursuant to its authority and within the orbit of its expertise, is entitled to deference, and even if different conclusions could be reached as a result of conflicting evidence, a court may not substitute its judgment for that of the agency when the agency’s determination is supported by the record.” (Matter of Partnership 92 LP & Bldg. Mgt. Co., Inc. v State of N.Y. Div. of Hous. & Community Renewal, 46 AD3d 425, 428-429 [1st Dept 2007] [citations omitted], affd 11 NY3d 859 [2008].)
B. Correction Law Article 23-A
Article 23-A of the Correction Law is “a remedial statute, enacted to eliminate the effect of bias against ex-offenders that prevented them from obtaining employment, while also protecting society’s interest in assuring performance by reliable and trustworthy persons.” (Matter of Belgrave v City of New York, 137 AD3d 439, 440 [1st Dept 2016], lv denied 27 NY3d 909 [2016].)
Pursuant to section 752 of article 23-A, no application for a license or employment, and no employment or license held by an individual, shall be denied or acted adversely upon by reason of the employee’s or licensee’s prior criminal conviction or by a finding of a lack of good moral character unless: (1) there is a direct relationship between the prior criminal offense and the specific license or employment held; or (2) the continuation of the license or employment would pose an unreasonable risk to the safety or welfare of others. In considering the effect of a criminal conviction on a license or employment, the public agency must consider:
(a) the state’s public policy encouraging the licensure and employment of previously-convicted persons;
(b) the specific duties and responsibilities necessarily related to the license or employment;
(c) the bearing, if any, the criminal offense for which the person was convicted will have on his or her fitness or ability to perform one or more of such duties or responsibilities;
(d) the lapse of time since the criminal offense;
(e) the person’s age at the time of the criminal offense;
(f) the seriousness of the offense;
(g) any information produced by the person or on his or her behalf regarding his or her rehabilitation and good conduct; and
*454 (h) the public agency’s legitimate interest in protecting the safety and welfare of others. (Correction Law § 753 [1].)
Pursuant to Correction Law § 750 (4) and (5):
“(4) ‘License’ means any certificate, license, permit or grant of permission required by the laws of this state, its political subdivisions or instrumentalities as a condition for the lawful practice of any occupation, employment, trade, vocation, business, or profession. Provided, however, that ‘license’ shall not, for the purposes of this article, include any license or permit to own, possess, carry, or fire any explosive, pistol, handgun, rifle, shotgun, or other firearm; [and]
“(5) ‘Employment’ means any occupation, vocation or employment, or any form of vocational or educational training. Provided, however, that ‘employment’ shall not, for the purposes of this article, include membership in [a] law enforcement agency.”
Neither membership nor law enforcement agency are defined. (Correction Law § 750.)
IV. Analysis
A. Does the law enforcement exemption apply here?
While respondents concede that only members of a law enforcement agency are exempt from the protections set forth in article 23-A, they rely on Matter of Belgrave in arguing that the exemption should be expanded to include a civilian licensed or seeking a license to work in a correctional facility. In Matter of Belgrave, the Court held that a member of a law enforcement agency includes “anyone . . . who seeks to be hired by a law enforcement agency” (137 AD3d at 441), relying on a dictionary definition of membership as “the state of belonging to or being a part of a group or an organization—the state of being a member—all the people or things that belong to or are part of an organization or a group.” (Id.) The Court also observed that had the legislature intended that the exemption apply only to those seeking to enforce laws as opposed to civilians employed by law enforcement agencies, it would have so provided. (Id.) Also persuasive in the Court’s view was a 1981 opinion letter wherein the New York State Attorney General found that given the authority of a law enforcement agency to consider an applicant’s criminal conviction “in determining whether to accept his application for employment in a law *455 enforcement agency,” a police department was entitled to transfer out of the department an employee assigned to work as a dispatcher, notwithstanding his certificate of relief from disabilities, and that the protections of article 23-A did not apply to him (1981 Atty Gen [Inf Ops] 96). (Id.)
As Matter of Belgrave pertains solely to employment by a law enforcement agency, it is inapposite here, as petitioner seeks a license. While petitioner’s license may be a prelude to employment within a DOC facility, the license was issued by Corizon or HHC, which are nowhere alleged to be law enforcement agencies (see e.g. Matter of Exum v New York City Health & Hosps. Corp., 37 Misc 3d 1218[A], 2012 NY Slip Op 52078[U] [Sup Ct, Kings County 2012] [where petitioner sought employment with HHC as special officer, or peace officer, court analyzed petition pursuant to article 23-A; no mention made of law enforcement exemption]), and article 23-A clearly distinguishes between, and separately defines in discrete subsections, licenses and employment, exempting from its protections only employment by a law enforcement agency. Moreover, while the statute contemplates that a license may be a condition of employment, the exemption applies to employment only, thereby reflecting the legislature’s awareness that a license obtained in pursuit of employment is not equivalent to employment.
Matter of Little v County of Westchester (36 AD3d 616 [2d Dept 2007]) is also inapposite. There, based on the law enforcement exemption, the Court held that a Commissioner of Correction is entitled to reject an application for employment as a correction officer given the applicant’s prior misdemeanor convictions. The Court observed that an agency’s discretion in determining the fitness of a candidate is particularly broad when hiring law enforcement officers, to whom high standards apply. (Id.) It is undisputed that petitioner here does not seek to be hired as a law enforcement officer.
Respondents also rely on Matter of Graves v City of New York (53 Misc 3d 895 [Sup Ct, NY County 2016]), a decision of a justice of this court addressing the issue before me. There, the court found that DOC was warranted in revoking the petitioner’s license, or security clearance, even though he was thereupon disqualified from eligibility for continued employment with Corizon at Rikers Island. (Id.) As the petitioner in that case had sought the license in order to work within DOC facilities, the court held that he had sought “membership” with *456 DOC, a law enforcement agency, and that while the petitioner was not a DOC employee, he was “ostensibly cloaked in the apparatus of an employee of DOC, and ... he was engaged in providing services to prisoners on behalf of DOC.” (Id. at 905.) The court thereupon broadly interpreted membership as including “contracted employees working at DOC’s facilities,” and observed that it had found no cases where a law enforcement agency such as DOC was required to comply with sections 752 and 753 of the Correction Law. (Id. )
The Graves court’s focus on the term “membership,” as in membership in a law enforcement agency, is unwarranted, as the term appears only within the discrete statutory definition of employment. The court nonetheless embarked on an analysis of whether the petitioner had sought access in order to work at a facility run by a law enforcement agency, thereby expanding the exemption to include anyone seeking a license or security clearance in order to obtain permission to work at a correctional facility. Janitors, for example, whether or not employed by the facility, would be swept within the exemption, with the relevant inquiry becoming whether the license or employment would involve access to a correctional or law enforcement facility.
Whether one is a member of or seeks membership in a law enforcement agency is irrelevant here, as petitioner, like the petitioner in Graves, sought a license, or security clearance. That the license would permit him to work in a correctional facility is irrelevant under the statutory scheme that, as noted, supra, prominently distinguishes between licenses and employment. As the inclusion of an exemption for one category within a statutory scheme, and the omission of the exemption for a different category reflect a deliberate legislative choice (see McKinney’s Cons Laws of NY, Book 1, Statutes § 240 [where law expressly describes particular thing to which it must apply, “an irrefutable inference must be drawn that what is omitted or not included was intended to be omitted or excluded”]), the exemption contained within article 23-A must pertain to employment or applications for employment only, and not to licenses. (See e.g. Eaton v New York City Conciliation & Appeals Bd., 56 NY2d 340 [1982] [statute exempted only certain types of institutions; nothing in statute permitted interpretation, or suggested, that legislature intended that similar exemption applied to other types of institutions]; Matter of Schwartz Landes Assoc. v New York City Conciliation & *457 Appeals Bd., 117 AD2d 74 [1st Dept 1986] [that act contained single exemption to general rule precluded existence of other exemptions]; see also Matter of Citizens For An Orderly Energy Policy v Cuomo, 78 NY2d 398, 431 [1991] [dissenting opinion] [as statutory section at issue contained exemption of specific action, inference warranted that if legislature had intended to exempt other actions, it would have done so]; Kroll v Clauson, 74 NYS2d 21 [Sup Ct, NY County 1947] [as statute provided that any eligible list was automatically extended to certain date but that section did not apply to principal’s eligible list, court construed statute as applying to any list except principal’s list], affd 272 App Div 1005 [1st Dept 1947], affd 297 NY 698 [1947].)
Had the legislature intended that employment and membership in a law enforcement agency include the grant of access to a facility owned or managed by a law enforcement agency, or that the protections of article 23-A not extend to one with access to or working at a facility owned or managed by a law enforcement agency, regardless of whether the applicant seeks a license or employment, it could have enacted such an exemption, along with a provision that one seeking a license for access to or working at a law enforcement facility or a license issued by a law enforcement agency is not protected by article 23-A. It did not do so. Rather, it limited the exemption to one employed or applying for employment, rather than one seeking a license, a distinction that cannot be ignored.
Such an expansive interpretation of the exemption is not warranted by the Court’s decision in Matter of Belgrave, as it was not disputed that the petitioner there sought employment with the police department, and was thus seeking to become a member of the department. Thus, the only issue there was whether a civilian position within the police department constitutes membership in a law enforcement agency. It cannot be reasonably argued that anyone seeking access to or working at a correctional facility is thereby seeking membership in a law enforcement agency, as was the police dispatcher seeking employment by and at a police department. The term membership as defined by the Court in Matter of Belgrave, “the state of belonging to or being a part of a group or an organization,” does not pertain here, as petitioner cannot be said to “belong” or “be part of” DOC simply by gaining access to or working at one of its facilities. (Id. at 431.) By that reasoning, anyone who has access to or works at a DOC facility becomes a member of, and is therefore employed by, DOC.
*458 As it is undisputed that petitioner’s license, rather than employment, is in issue, the law enforcement exemption is inapplicable. Respondents, moreover, cite no appellate authority related to licenses rather than employment.
B. Did respondents comply with the Correction Law?
It is undisputed that respondents’ initial decision to revoke petitioner’s license, or security clearance, was based solely on the results of a criminal background check and a prior conviction, without any determination as to whether there is a direct relationship between his misdemeanor conviction and his license, or security clearance, or that the continuation of the license would pose an unreasonable risk to the safety or welfare of others. It is also undisputed that DOC’s letter or memorandum detailing the factors to be considered on an appeal of a revocation does not reflect or reference all of the factors set forth in Correction Law § 753. As a consideration of all of the factors is required, and absent any evidence that respondents so complied, the revocation of petitioner’s license, or security clearance, and denial of his appeal are arbitrary and capricious as a matter of law. (Matter of Acosta v New York City Dept. of Educ., 16 NY3d 309 [2011] [failure to consider each factor constitutes failure to comply with Correction Law].) In Acosta, the Court of Appeals found that the respondent had acted arbitrarily and capriciously in denying the petitioner’s application for a security clearance, as it had failed to consider each factor. (Id. at 320.)
Having violated article 23-A, respondents also violated the New York State and City Human Rights Laws. (Cf. Matter of Belgrave, 137 AD3d at 442 [as respondent did not violate Correction Law, provisions of New York State and City Human Rights Laws inapplicable].)
Moreover assuming that respondents considered the factors listed in their appeal letter, all of them weigh in petitioner’s favor as his allegedly disqualifying conviction was for misdemeanor assault more than 25 years ago, his last criminal conviction was approximately 18 years ago, his eight-year tenure at Rikers Island is without blemish, and his appeal is supported by a recommendation from his supervisor. Also relevant is his relatively advanced age, and his background, which particularly suits him to counseling drug-addicted prisoners.
For all of these reasons, petitioner has demonstrated that respondents’ determinations revoking his security clearance and denying his appeal are arbitrary and capricious and ir *459 rational. However, as petitioner does not request back pay and other economic damages in his petition, his request for them in his reply papers is not considered. Petitioner’s request for attorney fees and costs pursuant to CPLR 8601 is granted to the extent of directing him to comply with section (b) of the statute by submitting the required application within 30 days of the final judgment in the proceeding.
V. Conclusion
Accordingly, it is hereby ordered and adjudged, that the petition is granted, and respondents’ revocation of petitioner’s security clearance is vacated and nullified; and it is further ordered and adjudged, that respondents are directed, within 30 days of the date of this order, to reinstate petitioner’s security clearance and reinstate him to the same position or a comparable vacant position.